COUNTY OF CLARK, a Political Subdivision of the State of Nevada, Appellant and Cross-Respondent, v. ARBY W. ALPER and RUTH ALPER, Respondents and Cross-Appellants.

No. 13732

July 3, 1984 685 P.2d 943

---

[7]The briefs filed for the SIIS in this case were not filed by present counsel of record.

*Robert J. Miller,* District Attorney, *Melvin R. Whipple,* Deputy District Attorney, Clark County, for Appellant and Cross-Respondent.

*George Rudiak* and *Brent A. Larsen,* Las Vegas, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

This is an inverse condemnation case in which the Alpers seek compensation from Clark County for a strip of land 50 by 1,000 feet in dimension.

The parties stipulate that the property, which currently lies within the roadbed of Flamingo Road, was taken for public use

on June 1, 1972.[1] The district court ruled that the Alpers were entitled to recover the value of the property, determined at the time of trial, and to prejudgment interest from the date of taking. A jury returned a verdict of $1,020,833.00 based on the value of the property at the time of trial. The court awarded an additional $667,205.73 as pre-judgment interest computed from the date of taking, $675,215.47 in attorney's fees, and $93,966.16 in costs, for a total judgment of $2,457,220.36.

The county challenges the judgment below on numerous grounds. First, the county argues that the court below erred in refusing to allow the jury to consider various zoning ordinances in determining the highest and best use of the property taken. Second, the county contests the trial court's ruling that the value of the property is to be determined as of the date of the trial. Third, the county asserts that if the land was properly valued as of the date of the trial, the award of prejudgment interest from the date of the taking was improper. Finally, the county questions whether the trial court correctly assessed costs and attorney's fees against it.

The Alpers cross-appeal, claiming that the jury was allowed to consider constitutionally prohibited evidence in valuing the property and that they are entitled to a tax refund for property taxes paid by them after the taking.

### Admissibility of Zoning Ordinance and Eisner-Stewart General Plan in Determining Just Compensation

Under article 1, section 8 of the Nevada Constitution, private property may not be taken for public use without just compensation. The term "just compensation" requires that the market value of the property should be determined by reference to the highest and best use for which the land is available

---

[1]In 1959, the Alpers purchased 5.68 acres of land located at the southeast corner of Las Vegas Boulevard South and Flamingo Road in Las Vegas. In November, 1966, the Alpers leased the entire 5.68 acres to the Bonanza Hotel interests for a term ending in May, 1972, with an option to renew the lease for an additional 50 years. In March, 1967, as a condition for securing a building permit, Bonanza granted the county a 52-year easement over the 50 by 1,000 foot strip of land adjacent to Flamingo Road. Pursuant to this easement, Flamingo Road was widened in May, 1967. On May 31, 1972, the original term of the lease expired after Bonanza had filed for bankruptcy. Per stipulation, the parties agreed that the Alper's owned the 50 by 1,000 foot strip of land free and clear of any easement or lease. For further elaboration see Alper v. Clark County, 93 Nev. 569, 571 P.2d 810 (1977), *cert. denied,* 436 U.S. 905 (1978). For a related appeal, see also County of Clark v. Bonanza No. 1, 96 Nev. 643, 615 P.2d 939 (1980).

and for which it is plainly adaptable. Skyland Water v. Tahoe Douglas Dist., 95 Nev. 289, 593 P.2d 1066 (1979); Sorenson v. State ex rel. Dep't of Hwys., 92 Nev. 445, 552 P.2d 487 (1976). Every factor which affects the value of the property and which would influence a prudent purchaser should be considered. Tacchino v. State ex rel. Department of Highways, 89 Nev. 150, 152, 508 P.2d 1212 (1973). As a restriction on land use, an existing zoning ordinance is generally regarded as a proper matter for the jury's consideration. United States v. Eden Memorial Park Asso., 350 F.2d 933 (9th Cir. 1965).

In the proceedings below, the county was prevented from introducing various county ordinances which indicated that the Alper parcel fell entirely within the setback lines of Flamingo Road. The county argues on appeal that Flamingo Road is either a "class 'C' highway" or a "section line road" under the provisions of Clark County Code sections 29.064.040(A)(3) and 29.064.040(B) and that it was therefore error for the district court not to have allowed the jury to consider zoning restrictions that are applicable to the Alper parcel as well as all similar parcels abutting Flamingo Road.[2]

In reviewing the record, we conclude that the district court properly refused to allow these ordinances to be considered by the jury. In order for the setback provisions of Clark County Code section 29.64.040(A) to apply, a street that the property abuts must be "designated on the master plan of streets and highways or by ordinance as a "class 'A,' 'B' [or] 'C' highway. . . ." Clark County Code § 29.64.040(A). No evidence was presented to the court below indicating that Flamingo Road had ever been designated on a master plan or by county ordinance as a "class 'C' highway." Moreover, the county admits that Flamingo Road lies approximately 200 feet south of the actual section line, and it is, therefore, not a "section line road" under Clark County Code section 29.64.040(B). Since the county has failed to demonstrate that the ordinances apply,

---

[2]Clark County Code § 29.64.040 provides in part:

29.64.040 Special provisions for setback lines. Notwithstanding any of the foregoing provisions of this chapter, special provisions are adopted as follows:

(A) Those streets designated on the master plan of streets and highways or by ordinance as class "A," "B" and "C" highways as follows:

. . . .

(3) Class "C" highways, from the established centerline fifty feet on each side thereof;

(B) From the section lines of every section of land within Clark County, fifty feet from every section line on each side thereof. . . .

they must be considered to be irrelevant to the present controversy. In respect to this matter, the district court is affirmed.

The county additionally argues that even if Flamingo Road is not deemed to be a Section Line Road or a Class C Highway, it falls within the setback requirements of Clark County Code section 29.064.040(E). Under this ordinance, property that abuts any street is subject to a 30-foot setback from the center line of the road.[3] The district court improperly held this ordinance to be unconstitutionally vague on the basis that one would have to guess at where the centerline should be located.

Zoning ordinances carry with them a presumption of validity. McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961). In construing the present ordinance, it is clear that the centerline must be determined before the street was widened, not after, as the county contends. A contrary interpretation would lead to the unacceptable conclusion that the centerline would be subject to repeated change upon each successive expansion of the roadway. Since the centerline of Flamingo Road was located 20 feet north of the Alper parcel before the 1967 expansion, Clark County Code section 29.64.040(E) imposes a 10-foot setback on the northern 1,000-foot border of the Alper's land. It was therefore error for the district court not to have let this ordinance be considered by the jury in valuing the property. Nevertheless, although the county was not allowed to introduce Clark County Code section 29.064.040(E), it was permitted to introduce the general zoning restrictions that apply to all lots in an H-1 zoning district as well as setback restrictions that apply to all lots bordering Las Vegas Boulevard South. According to testimony by Greg Borgel, a principal planner employed by Clark County, since the western 50-foot border of the Alper parcel is contiguous with Las Vegas Boulevard South, no structure could be built within 72 feet from the boulevard's curbline. Additionally, under Clark County Code section 29.30.070, no building or structure may cover over 60 percent of the area of a lot located in a H-1 zoning district. Therefore, any effect that the 10-foot setback requirement would have had on the value of the parcel is non-existent or *de minimus* in comparison to the zoning restrictions that the jury was entitled to consider. The failure to submit Clark County Code section 29.064.040(E) to the jury was therefore harmless.

---

[3] *Clark County Code 29.64.040(E) imposes a general setback require-*ment on "every other street, whether designated as a street, highway, thoroughfare, parkway, throughway road, avenue, drive, lane, boulevard, place or however otherwise designated, thirty feet from the centerline on each side therof."

In their cross-appeal the Alpers claim that the district court erred in allowing the county to produce expert testimony that the land in question had only a nominal value of $10,000 since "no legal economic uses" could be made of the property. The expert's appraisal was based largely on information contained in the Eisner-Stewart General [Master] Plan and the Las Vegas Valley Transportation Study indicating that Flamingo Road, which traversed the northern 1,000-foot long boundry of the Alper parcel, would eventually be widened to alleviate the traffic congestion anticipated from the continual growth of the Las Vegas community.[4] Under the county's planning guides, the Alper's parcel fell entirely within the future width lines of the Flamingo Road expansion project. From this information, the expert concluded that, in all likelihood, neither the county planning commission nor the county commissioners would authorize a building permit or a conditional use permit for the development of the property and that, therefore, the property has only a nominal value.

The Alpers contest the county's nominal value theory on the ground that it is based on constitutionally impermissible evidence. We agree.

Ordinarily, zoning restrictions permitting a viable economic use of the property may be considered for valuation purposes. *See* United States v. Eden Memorial Park Asso., 350 F.2d 933 (9th Cir. 1965). However, as noted in United States v. Virginia Electric & Power Co., 365 U.S. 624, 636 (1961), it would be manifestly unjust to permit a public authority to depreciate property values by a threat of a construction of a government project and then to take advantage of this depression in price when the property is eventually condemned. *See* Lower Nueces River Water Supply District v. Collins, 357 S.W.2d 449, 454 (Tex.Civ.App. 1962); Board of Comm'rs of State Inst. v. Tallahassee Bank & Trust Co., 108 So.2d 74 (Fla.App. 1958). The court must therefore exclude any evidence of the depreciation in value caused by the prospective taking once the government has announced its commitment to the project. State Dept. of Highways v. Copper Mountain, 624 P.2d 936 (Colo.App. 1981); Dade County v. Still, 377 So.2d 689 (Fla. 1979); Klopping v. City of Whittier, 104 Cal.Rptr. 1 (Ct. 1972); United

---

[4]The appraiser also considered the unique shape of the parcel, its physical location, the general restrictions applicable to all properties located in an H-1 zoning district, as well as the street dedication requirements which are typically imposed on a developer as a condition for obtaining a building permit or conditional use permit.

States v. Virginia Elec. & Power Co., above; *see also* Annot., 5 A.L.R.3d 901 (1966).[5]

In the case at hand, Clark County obtained a 52-year easement from Bonanza Hotel for the purpose of putting the Eisner-Stewart General Plan and the Las Vegas Valley Transportation Study into effect. The adoption of the general plan and the transportation study by the county commissioners was equivalent to a public announcement that the Alper parcel would be subject to the future widening of Flamingo Road. Based on these planning guides, it would be apparent to the prudent purchaser that the county would not approve any use or development which is inconsistent with the widening project or which would not alleviate the traffic congestion. Since the adoption of the planning guides by the county commissioners was merely a preliminary step to the actual taking, it was error for the trial court to have allowed the county's expert to base his opinion in part on either the general plan or the transportation study. Nevertheless, in reviewing the record before us, it is clear that the jury, in awarding more than one million dollars for the value of the Alper parcel, rejected the appraiser's testimony that the land was only worth $10,000. We, therefore, consider the introduction of such testimony to be harmless.

In conclusion, when determining the market value of a parcel of land at its highest and best use, due consideration should be given to those zoning ordinances that would be taken into account by a prudent and willing buyer.[6] Nevertheless, the impact on the fair market value that resulted from the taking itself should be excluded. The property is to be valued as if the government project that resulted in the taking was neither contemplated nor carried out. In the present appeal, although the county's appraisal was based on community planning guides which ultimately were carried into effect when Flamingo Road was enlarged, the introduction of such evidence was harmless. The trial court is therefore affirmed on these issues.

[5]This rule has been codified in NRS 342.230(3) applicable to condemnation projects funded in whole or in part by the federal government. This statute provides in part:

Any decrease or increase in the fair market value of real property to be acquired prior to the date of valuation caused by the public improvement for which the property is acquired, or by the likelihood that the property would be acquired for such improvement, . . . will be disregarded in determining the compensation for the property.

[6]Nothing in this opinion should be construed as limiting the holding of Sorenson v. State ex rel. Dep't of Hwys., 92 Nev. 445, 552 P.2d 487 (1976), that the reasonable possibility of obtaining a zoning change may be considered by the jury.

## Time of Valuation

The county appeals from the lower court's ruling that the property should be valued as of the time that the action was brought to trial rather than the time that the property was taken. The district court based its holding on NRS 37.120(1)(b), which allows valuation to be made as of the time of trial in formal eminent domain proceedings not brought to trial within a two-year period.[7] In response, the county argues that NRS 37.120(1)(b) is applicable only to eminent domain proceedings brought by the condemnor under the authority of NRS Chapter 37 and is not applicable to inverse condemnation suits.

We agree with the district court that the Alper parcel should properly be valued as of the time of the trial. In formal condemnation proceedings, NRS 37.120(1)(b) places the burden on the government to move the case to trial within two years after the action is commenced. If it does not, and the delay is not primarily caused by the actions of the landowner, the government must account for the increased value of the property.

In the case at hand, the county's easement for Flamingo Road was extinguished on May 31, 1972, when the Bonanza Hotel lease was terminated. The parties stipulated that the land was subsequently taken for public use on June 1, 1972. Upon the wrongful taking, the county should have initiated formal eminent domain proceedings under Chapter 37 of the Nevada Revised Statutes. Because it did not, the Alpers filed the present action on July 31, 1972, for inverse condemnation. We hold that the county cannot delay formal eminent domain proceedings on the expectation that the landowner will file an action for inverse condemnation and thereby avoid its obligation to bring the matter to trial within two years. Inverse condemnation proceedings are the constitutional equivalent to eminent domain actions and are governed by the same rules and principles that are applied to formal condemnation proceedings. *See* Pierpont Inn, Inc. v. State, 74 Cal.Rptr. 521 (Ct. 1969) (time of trial statute for eminent domain proceedings that are not brought to trial within one year applied to an action for inverse condemnation). Thus the district court did not err in applying

---

[7]NRS 37.120(1)(b) provides in pertinent part:

In any action commenced after April 4, 1965, in which the issue is not tried within two years after the date of commencement of the action, unless the delay is caused primarily by the defendant, the right to compensation and damages shall be deemed to have accrued at the date of service of summons or at the date of trial, whichever results in the greater compensation and damages.

NRS 37.120(1)(b) in valuing the Alper parcel at the time of the trial.

## Prejudgment Interest

The district court awarded prejudgment interest from the 1972 stipulated date of taking. The county argues that an award of prejudgment interest is improper under the facts of this case since the Alpers were given the benefit of the appreciated land value when the lower court applied NRS 37.120(1)(b) in valuing the property at the time of the trial. The county contends that to award prejudgment interest on a value determined at the time of the trial would permit the Alpers to receive a double credit for the factor of inflation. We disagree.

When private property is taken for public use, the owner must be paid "just compensation." As stated in Tacchino v. State ex rel. Department of Highways, "The word 'just' is used to intensify the meaning of the word 'compensation' and conveys the idea that the equivalent to be rendered for the property taken shall be real, substantial, full and ample." 89 Nev. at 152 (citations omitted). In order for the landowner to be compensated fully, he or she must "be put in as good position pecuniarily as he would have been if his property had not been taken." Seaboard Air Line Ry. v. United States, 261 U.S. 299 (1923) (citations omitted). Where the market value of the property is not paid contemporaneously with the taking, the owner is entitled to interest for the delay in payment from the date of the taking until the date of the payment. Saunders v. State, 70 Nev. 480, 273 P.2d 970 (1954); *see also* Miller v. United States, 620 F.2d 812, 837 (Ct. Cl. 1980); Annot., 36 A.L.R.2d 337, §§ 46-71 (1954). The purpose of awarding interest is to compensate the landowner for the delay in the monetary payment that occurred after the property had been taken. Refining Co. v. Director of Public Works, 244 A.2d 853, 855 (R.I. 1968).

The district court's award of prejudgment interest does not give the Alpers a double recovery, as suggested by the county. The time of trial valuation is merely an alternative method of valuing land in protracted condemnation proceedings. When a governmental body does not bring a condemnation action to trial within the statutory two-year period, NRS 37.120(1)(b) prescribes that the government must bear the burden of the inflated value. Although the landowner has been benefited by the time of trial valuation, he or she has still been deprived of the use of the proceeds that should have been paid at the time

of the taking. It is this loss that the award of interest compensates. Such an award is proper notwithstanding the fact that the value of the property was fixed as of the date of trial and the fact that the property's value at the time of trial was more than its value at the time of the taking. *See* Mehl v. People ex rel. Dep't of Public Works, 119 Cal.Rptr. 625 (Ct. 1975); Pierpont Inn, Inc. v. State, above; City of San Rafael v. Wood, 301 P.2d 421 (Cal.App. 1956); Metropolitan Water District v. Adams, 107 P.2d 618 (Cal. 1940).

We note that a contrary ruling would require the landowner to choose, at his peril, whether to forego prejudgment interest when seeking a time of trial valuation or whether to waive the two-year trial requirement contained in NRS 37.120(1)(b) and recover interest from the time of the taking. As indicated by the award in the present case, prejudgment interest may be very substantial in protracted condemnation proceedings and may in fact exceed the inflated value of the land. The intent of the legislature by enacting NRS 37.120(1)(b) was not to create such an election, but to force the government to bring a condemnation action to trial. We therefore hold that the Alpers are entitled to an award of prejudgment interest. We nevertheless conclude that the trial court erred in computing damages.

The district court allowed prejudgment interest from the date of taking at seven percent per annum under NRS 37.175. The court below nevertheless refused to amend the judgment to conform with the 1979 and 1981 amendments to NRS 37.175, increasing the interest rate from seven percent to eight and twelve percent, respectively.[8] The Alpers contend that the district court should have applied the eight percent interest rate prospectively from July 1, 1979, and a twelve percent rate prospectively as to both the prejudgment and postjudgment interest from July 1, 1981. The amendments increasing the interest rates under NRS 37.175 were expressly made applicable only to actions that arose on or after July 1st of their respective years.[9] In their cross-appeal the Alpers argue that the district court erroneously concluded that it was prevented by law from applying the increased interest rates to actions which did not arise on or after the effective date of the amendment. Although we agree that the district court is not bound in its award of prejudgment interest by the statutory provisions referred to above, we disagree with the Alper's contention that they are entitled to a twelve percent postjudgment interest.

---

[8] *See* 1981 Nev. Stats., ch. 739 § 2 at 1859; 1979 Nev. Stats., ch. 448, § 3 at 830.

[9] *See* 1981 Nev. Stats., ch. 739 § 6; 1979 Nev. Stats., ch. 448 § 6.

 ██

As stated in the preceding section, where the compensation is not paid contemporaneously with the taking, interest shall be included in the award as compensation for the delay in payment. The determination of the proper rate of interest, as with any other type of compensation under the fifth and fourteenth amendments, is a question of fact. *See* Miller v. United States, 620 F.2d 812, 837 (Ct. Cl. 1980): "[t]he determination of just compensation under the fifth amendment is exclusively a judicial function." *Miller,* above at 837 (citations omitted). The district court is therefore not bound by the language of the amendment to NRS 37.175 limiting the increased interest rates to actions which arise on or after the amendment's effective date.

In the proceedings below, the Alpers did not present any evidence on the actual market rate of interest during the years in question. Instead, the Alpers contend that the 1979 and 1981 amendments to NRS 37.175 implicitly recognize the rise of interest rates during the nine years that preceded the trial. Therefore, the Alpers argue that the lower court's adherence to the pre-1979, seven percent rate of interest, was facially inadequate.

The statutory interest rate establishes at least a *prima facie* basis for determining a fair rate and is not controlling if some other rate is required to meet the constitutional requirement of just compensation. United States v. 412.715 Acres of Land, 60 F.Supp. 576 (1946). As stated in Miller v. United States, above, "the rate of interest set by a statute can be applied to a claim for just compensation if such rate is reasonable and judicially acceptable." 620 F.2d at 837 (citations omitted). Statutory interest rates as applied to prejudgment interest are generally considered as a "floor" on the rate allowable for compensation under the fifth amendment. United States v. Blankinship, 543 F.2d 1272, 1276 (9th Cir. 1976). When NRS 37.175 was amended in 1979 and 1981, the legislature recognized the rise of interest rates that occurred in the late 1970's and early 1980's. This recognition should be applied to the present proceeding as *prima facie* proof of the increase in interest rates from 1972 until the judgment on October 1, 1981. Therefore the award of prejudgment interest is remanded to the district court to be recomputed in light of the 1979 and 1981 amendments to NRS 37.175.

 ██

Although the district court was not restricted by the statutory rate of interest in compensating for the prejudgment interest, a similar argument cannot be made as to postjudgment

interest. Disregard of the statutory rate for prejudgment interest was based on the principle that compensation under the fifth and fourteenth amendments to the United States Constitution is a question of fact that may not be restricted by statute. *See Miller,* above. Nevertheless, once a "taking" has been properly reduced to a judgment, the constitutional requirement of "just compensation" has been satisfied. Application of the statutory restrictions will not interfere with the landowners right to seek full and complete compensation. Since the statutory provisions apply, the district court correctly held that the 1979 and 1981 amendments to NRS 37.175 were not applicable. The district court's award of postjudgment interest is therefore affirmed.

## Reimbursement of Taxes

The Alpers claim that they should be reimbursed by the county for all taxes paid by them since the June 1, 1972 date of taking. We agree. An owner who is dispossessed from his or her land when it is taken for public use is no longer obligated to pay taxes. *See* Chicago Park Dist. v. Downey Coal Company, 115 N.E.2d 223 (Ill. 1953). The district court is therefore reversed with instructions to reimburse the Alpers for property taxes actually paid after the land was taken by the county.

## Attorney's Fees

The district court awarded attorney's fees under NRS 342.320(2) and 42 U.S.C. section 1988. Attorney's fees generally may not be awarded unless provided for by statute or by contract. Kelly Broadcasting v. Sovereign Broadcast, 96 Nev. 188, 606 P.2d 1089 (1980). In reviewing the record before us, we agree with the county's contention that neither statutory provision applies.

Under NRS 342.320(2), attorney's fees may be awarded pursuant to the Relocation Assistance and Real Property Acquisition Policies Act.[10] In order for the provisions of this act to

---

[10]NRS 342.320 provides in pertinent part:

2. In any proceeding brought against a public body to recover compensation for the taking of property, when such compensation is awarded to the plaintiff, the court, or the public body effecting a settlement of any such proceeding, shall award or allow to such plaintiff, as a part of the judgment or settlement, a sum which will reimburse such plaintiff for his reasonable costs, disbursements and expense, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding.

apply, the public body administering the programs or projects must be funded in whole or in part by the federal government. NRS 342.120(1). Since the Alpers did not produce evidence that federal funds had been received by the county to acquire or widen that portion of Flamingo Road which is subject to the present inverse condemnation proceeding, NRS 342.320(2) does not apply.

The Alpers were additionally awarded attorney's fees under 42 U.S.C. section 1988.[11] Such fees are proper when an action is brought under the Civil Rights Act. In reviewing the record before us we note that the Alpers neither initiated an action under 42 U.S.C. section 1983 nor argued that the county violated their civil rights. They merely sought compensation for the taking of their land for public use. Since 42 U.S.C. section 1983 does not apply to the present proceeding, the award of attorney's fees under 42 U.S.C. section 1988 was improper. The award is therefore reversed.

As to the remaining allegations of error argued by the appellant and cross-appellants, we find them to be without merit.

---

[11]42 U.S.C. § 1988 (1979) provides as follows:

> In any action or proceeding to enforce a provision of Sections 1982, 1983, 1985 and 1986 of this Title, Title IX of Public Law 92-318, or any civil action or proceeding, by and on behalf of the United States of America, to enforce, or charging a violation of the provision of the United States Internal Revenue Code, or Title VI of the Civil Rights Act of 1964, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.