STAGECOACH UTILITIES, INC., A NEVADA CORPORA-
TION, Appellant, *v.* STAGECOACH GENERAL
IMPROVEMENT DISTRICT, Respondent.

No. 16678

September 4, 1986                    724 P.2d 205

*Alan Smith,* Reno, for Appellant.

*William G. Rogers,* District Attorney, Lyon County, for
Respondent.

## OPINION

*Per Curiam:*

This case presents a challenge to the district court's award of
damages of $1.00 to appellant in the condemnation proceedings
below. Because we have concluded that the district court erred in
determining the amount of damages, we reverse the judgment of
the district court and remand this action for a reevaluation of
damages in accordance with the views expressed in this opinion.

Prior to August 1984, appellant, Stagecoach Utilities, Inc. (the
Utility), owned and operated a water distribution system which
provided water for domestic uses and fire protection to the Stage-
coach area of Lyon County, Nevada. At the very least, the water
distribution system was unprofitable, and extensive repairs were
needed to enable the system to provide an adequate level of
service to Stagecoach residents.

In August 1984, respondent, Stagecoach General Improvement District (the District), initiated proceedings to condemn the water system. Subsequently, the Utility stipulated to the condemnation of its property. As a result, the District received title to two parcels of land, all water tanks, water mains, water laterals, pumps, lifts, meters, valves, and all water rights contained in four specified water permits. Therefore, the sole issue remaining for trial was that of damages. Three experts testified as to their opinion of the value of the condemned property; however, the district court stated that it received no assistance whatsoever from the experts' testimony. In fact, the district court found that, in view of the evidence presented, any finding that the Utility had suffered any real and substantial damage would be based on mere speculation. Therefore, the district court awarded damages in the amount of $1.00 to the Utility.

It is clear that when private property is taken for public use, just compensation must be paid to the property owner. Nev. Const. art. 1, § 8. "The word 'just' is used to intensify the meaning of the word 'compensation' and conveys the idea that the equivalent to be rendered for the property taken shall be real, substantial, full and ample." Sorenson v. State ex rel. Dep't of Hwys., 92 Nev. 445, 447, 552 P.2d 487, 488 (1976). It is undisputed that placing a value on a utility for condemnation purposes is a difficult endeavor at best. Onondaga County Water Auth. v. New York W. S. Corp., 139 N.Y.S.2d 755 (1955). There is no established market for utilities; therefore, comparable sales with which to compare the instant condemnation are few. Valuation is made all the more difficult when the condemned utility is a losing proposition such as the Stagecoach water system, yet difficulty in assessing a value does not relieve a court from its duty to award just compensation to the condemnee.

Ordinarily, the rule in condemnation actions is that when determining the value of the condemned property, the trial court must look to the value that the property had to the condemnee, not the condemnor. See Monongahela Navigat'n Co. v. United States, 148 U.S. 312, 328 (1893). Accordingly, from the Utility's standpoint, it appears that the Utility has been relieved of the enormous burden of repairing an unprofitable water system by virtue of the condemnation. Nevertheless, the Utility has had property that it once owned taken by the District. Obviously, the District wishes to acquire the system, and the constitutional mandate is clear: Just compensation must be paid to the Utility. Therefore, in cases such as this, it has been suggested that the court look to the value that the utility has to the condemnor to arrive at a damage amount. See Port Auth. Trans-Hudson Corp. v. Hudson R. T. Corp., 231 N.E.2d 734 (N.Y. 1967), cert. denied, 390 U.S. 1002 (1968). The rationale for such an approach has been succinctly stated as follows:

Where . . . the utility has been operated over a substantial period of time at a loss the property is not an asset of the condemnee, and, as a matter of fact, is a definite liability which is all the more onerous by reason of the inability of the company to effect a unilateral discontinuance of its project. "Value to the owner" under such circumstances has been held not to be controlling. The rationale in support of the exception is predicated upon the fact that from the standpoint of the governmental condemnor there are other facts equally controlling. It must be assumed that if the condemnor desires to acquire a particular utility, it does so because it considers the property of value to it. It wishes to make available a supply of the product of the utility whether the operation is carried on at a profit or at a loss. Only two means are available to the condemnor to accomplish that end. It can either build a new plant or it has the power to acquire the existing plant by paying "just compensation." If the condemnee's plant was not in existence and a new one had to be constructed, the cost to the condemnor would normally be an amount larger than the value of the conde- mnee's plant, plus the cost of placing it in first class operat- ing condition. From the standpoint of the condemnor, the fair value in such cases must be between the salvage value of the property, as a minimum, and the depreciated cost of the property minus certain deductions, as the maximum.

4A J. Sackman, *Nichols on Eminent Domain* § 15.4[1] (3d ed. 1985) (footnote omitted). *See also* 2 Orgel, *Valuation Under the Law of Eminent Domain* § 217 (2d ed. 1953). We conclude that such an approach is sound in a situation such as herein pre- sented.[1]

Accordingly, it is our opinion that an accurate measure of the just compensation to be paid to the Utility for the condemnation of its property lies between an amount equal to the salvage value of the water system and an amount equivalent to the reproduction cost of the water system minus depreciation. Salvage value is that amount representing the value of the plant and equipment remain- ing after the useful life of that plant and equipment has expired. Black's Law Dictionary 1203 (5th ed. 1968). Reproduction cost is that amount representing the cost that would be incurred should

---

[1]Counsel for appellant asks us to look at the experts' testimony and fix an amount to be awarded for the taking of the Utility's property. *Cf.* Cardan Overseas, Ltd. v. Harris, 92 Nev. 62, 544 P.2d 1202 (1976) (reviewing court must take remedial action if there is no conflict in the evidence presented on any given material point). In view of the fact that the three experts gave a total of seven different amounts, we simply cannot agree with counsel's opinion that the evidence was not in conflict. For that reason, we decline to fix the amount of damages.

the District undertake to build a plant identical to that condemned. *See* 2 Orgel, *Valuation Under the Law of Eminent Domain,* above, § 210. Depreciation is the combination of two separate quantities: The first, physical depreciation, is that amount representing the decline in value of the water system due to the expiration of the useful life of plant and equipment, and, the second, functional depreciation, is that amount representing the decline in value of the water system due to inadequacy and obsolescence of the system at the time of condemnation. 2 Orgel, *Valuation Under the Law of Eminent Domain,* above, §§ 212-213. We also note that any award in this action must include an amount representing the fair market value of the real property taken from the Utility by the District.

Because the record before us is devoid of any evidence representing the above range of damages, it will be necessary for the district court to hear additional evidence of value. Therefore, we remand this case to the district court for a determination of damages in accordance with this opinion.[2] Finally, we note that the Utility is entitled to interest on the award made by the district court on remand, running from the date of the taking until the date of payment. County of Clark v. Alper, 100 Nev. 382, 392, 685 P.2d 943, 950 (1984).

---

[2]The Utility has argued that it is entitled to receive as severance damages the amount of $13,500 in accounts receivable. Contrary to the Utility's assertion, the accounts receivable are not rendered uncollectable by the condemnation. The Utility no longer has the option of shutting off the delinquent customers' water to force payment, but the Utility may initiate legal proceedings to collect any amounts still owing. Also, the Utility suggests that it should receive damages for the loss of its water rights. There was substantial evidence presented below showing that only excess water rights would have value and that there were no such excess water rights owned by the Utility. Therefore, the refusal of the district court to award a sum for water rights will not be disturbed on appeal. *See* Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984).