NEVADA POWER COMPANY, A NEVADA CORPORATION, APPELLANT, *v.* 3 KIDS, LLC, A NEVADA LIMITED LIABILITY COMPANY, RESPONDENT.

No. 56881

July 3, 2013 302 P.3d 1155

*Ballard Spahr LLP* and *Stanley W. Parry* and *Timothy R. Mulliner*, Las Vegas; *Reisman Sorokac* and *Heidi J. Parry Stern*, Las Vegas, for Appellant.

*Cotton, Driggs, Walch, Holley, Woloson & Thompson* and *Stacy D. Harrop* and *Gregory J. Walch*, Las Vegas, for Respondent.

Before the Court EN BANC.[1]

## OPINION

By the Court, GIBBONS, J.:

In this opinion, we review a jury instruction regarding the determination of fair market value of condemned property, a portion of which is located within a government setback, for the purpose of ascertaining just compensation. Although we conclude that the jury instruction at issue provided an overbroad reading of our decision in *City of North Las Vegas v. Robinson*, 122 Nev. 527, 134 P.3d 705 (2006), we conclude that no prejudice was established because a separate jury instruction remedied the error. Additionally, we consider whether the district court abused its discretion by allowing testimony provided by respondent 3 Kids, LLC's expert. We conclude that the district court did not abuse its discretion by allowing the expert to testify regarding her paired sales analysis. Therefore, we affirm the district court's judgment.

### FACTS AND PROCEDURAL HISTORY

3 Kids purchased a 3-acre parcel west of the Las Vegas Strip (the property) for $8.65 million. The property was zoned for industrial use, but 3 Kids believed it could be re-zoned for more intensive development. The northernmost 20 feet of the property is in a county setback. The only developments a landowner may perform in the setback relate to landscaping and parking. Nevada

---

[1]THE HONORABLE KRISTINA PICKERING, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

Power already had an existing 10-foot-wide utility easement within the setback.

In 2008, appellant Nevada Power Co. informed 3 Kids that it was going to exercise two easements on the property for installation of high-voltage transmission lines: one 5-foot-wide easement on the north side of the property located within the setback (the Harmon easement) and a 35-foot easement on the east side of the property (the Eastern easement). Nevada Power offered 3 Kids $750,000 for the easements, but 3 Kids rejected the offer and the issue of just compensation went to trial. At trial, 3 Kids argued that Nevada Power owed $2,106,000 in just compensation based on a theory that holding the property for a speculative rise in market value was its highest and best use. 3 Kids' expert, Tami Campa, valued the property at $85 per square foot and concluded Nevada Power was taking 90% of the rights to the land within the easements, except for the area the pole occupied (which was 100%). Disagreement ensued over the value of the Harmon easement, since it was within a setback and 3 Kids' use of the property was limited to landscaping and parking. Campa did not consider the Harmon easement's location within the setback because buyers pay an average price per square foot. Campa used a paired sales analysis to determine that the value of the remainder of the property was impaired as a result of the installation of the high-voltage transmission lines.[2]

Nevada Power's experts disagreed with Campa and concluded that the amount of just compensation due was only $556,000, based on an industrial development highest and best use. Nevada Power's expert determined that Nevada Power was taking 10% of the rights to the land within the Harmon easement since it was within a setback and determined that Nevada Power was taking 75% of the rights of the land within the Eastern easement. Nevada Power's expert valued the property at $65 per square foot and valued the easements at only $45 per square foot. This reflected the 10% decrease on the Harmon easement and the 75% decrease on the Eastern easement. Nevada Power's expert also opined that no severance damages existed as a result of the installation of the high-voltage transmission lines. Severance damages are damages awarded to compensate for the difference between the value of the remainder property before and after the taking.

During the reading of the jury instructions, Nevada Power objected to Jury Instruction No. 35, which instructed the jury to disregard the setback in its valuation of the property, on the ground

[2]A paired sales analysis estimates the value of the subject property based on previous sales of comparable properties. A paired sales analysis can also be used to isolate a particular variable—in this case, power lines—to determine the impact of that variable on property values.

that 3 Kids' use of the area within the setback was limited to parking and landscaping. 3 Kids responded that this court's holding in *Robinson* was broad enough to encompass the proposed instruction. The district court agreed with 3 Kids and included the instruction.

After deliberation, the jury awarded 3 Kids $1.7 million in just compensation. The jury found by special verdict that $823,000 of the award represented compensation for the value of the easements taken and that $894,000 of the award was for severance damages. Nevada Power now appeals.

## DISCUSSION

*Jury Instruction No. 35 incorrectly stated the holding of Robinson, but this error did not affect Nevada Power's substantive rights*

We review a district court's approval of a jury instruction for abuse of discretion or judicial error. *FGA, Inc. v. Giglio*, 128 Nev. 271, 280, 278 P.3d 490, 496 (2012). We review de novo whether an instruction is a correct statement of the law. *Cook v. Sunrise Hosp. & Med. Ctr., L.L.C.*, 124 Nev. 997, 1003, 194 P.3d 1214, 1217 (2008). Even if a jury instruction misstates the law, it only warrants reversal if it causes prejudice substantially affecting the party's rights, and "but for the error, a different result might have been reached." *Id.* at 1005-06, 194 P.3d at 1219.

Jury Instruction No. 35 read:

> In determining the fair market value of the land in which the easement is sought, you are required to value the property as a whole, and not put a lesser value on the portion of the property to be condemned based upon any governmental restrictions that apply solely to that portion.

Nevada Power argues that this instruction runs afoul of this court's holding in *City of North Las Vegas v. Robinson*, 122 Nev. 527, 134 P.3d 705 (2006). We agree.

In *Robinson*, the City of North Las Vegas sought to condemn a portion of a larger parcel. *Id.* at 529, 134 P.3d at 706. Absent a taking, that portion was subject to a dedication requirement to the City if the land was commercially developed. *Id.* Both parties agreed that the highest and best use of the property was commercial, but the City's expert valued the property based on uses that would not trigger a dedication (open space, fencing, directional signage, and the right to remove trespassers), given the fact that a commercial valuation would have rendered the condemned portion valueless by triggering the dedication requirement. *Id.* at 530, 134

P.3d at 707. The district court gave an instruction that directed the jury to "determine the value of the condemned parcel in the before condition based upon only those uses to which the property can be put without obtaining government approvals that would trigger the dedication." *Id.* at 529, 134 P.3d at 706. This court held that the instruction was inconsistent with just compensation requirements in Nevada because it "caused the jury to ignore the highest and best use of the entire parcel and to improperly sever the condemned portion from the whole parcel." *Id.* at 531, 134 P.3d at 707; *see Cnty. of Clark v. Alper*, 100 Nev. 382, 386-87, 685 P.2d 943, 946 (1984) (" 'Just compensation' requires that the market value of the property should be determined by reference to the highest and best use for which the land is available and for which it is plainly adaptable.").

Here, the first portion of Jury Instruction No. 35, which instructed the jury to value the property as a whole, is consistent with our holding in *Robinson*. But the second part, which instructed the jury not to "put a lesser value on the portion of the property to be condemned based upon any governmental restrictions that apply solely to that portion," is inconsistent with our language in *Robinson*. In *Robinson*, we stated that the trier of fact is permitted to consider "evidence of land-use restrictions that would influence a prudent purchaser when purchasing the condemned property." *Id.* at 532, 134 P.3d at 708. In certain situations, evidence of land-use restrictions may not be considered, such as where it causes the jury to disregard the highest and best use of the whole parcel. *Id.* at 532-33, 134 P.3d at 708-09 (citing *Alper*, 100 Nev. at 389-90, 685 P.2d at 947-49). As a restriction on land use, an existing setback is generally a proper matter for the jury to consider. *See Alper*, 100 Nev. at 387, 685 P.2d at 946 ("As a restriction on land use, an existing zoning ordinance is generally regarded as a proper matter for the jury's consideration."). This appeal does not present a situation like that in *Robinson* where the restriction caused the jury to disregard the highest and best use of the whole parcel by valuing the property at a lower use in order to avoid triggering the setback. Despite this fact, Jury Instruction No. 35 instructs the trier of fact to disregard the setback in a situation that did not cause them to disregard the highest and best use of the whole parcel. Therefore, we conclude that this portion of the instruction was erroneous.

This error only warrants reversal if it caused prejudice that substantially affected Nevada Power's rights. *See Cook*, 124 Nev. at 1005-06, 194 P.3d at 1219 (holding that reversal of a district

court's judgment is warranted only where an error in the statement of law in a jury instruction is prejudicial). Jury Instruction No. 19, which was also read to the jury, stated, in pertinent part:

> If the land subject to the easement will still have some market value after the taking of the easement and the construction and improvement in the manner proposed, Nevada Power is required to pay on the decrease in market value that results from the easement.

> Thus, in determining the compensation to be awarded for taking the easement, you must first determine the fair market value of the land in which the easement is sought and then determine the value of the same land as it will be subject to the easement and the construction of the proposed improvement. The difference between these amounts will be the value of the easement.

Because Jury Instruction 19 correctly applies this court's reasoning in *Robinson*, the instruction alleviated any prejudice to Nevada Power caused by the erroneous language in Jury Instruction No. 35. *Id.*

Additionally, the jury's verdict was supported by substantial evidence, and ''[t]his court will not overturn a jury's verdict if the verdict is supported by substantial evidence unless, [considering] all the evidence . . . , the verdict was clearly wrong.'' *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 384, 213 P.3d 496, 503 (2009) (internal quotation omitted). The jury's conclusion that the easement was worth $823,290 was nearly $400,000 lower than 3 Kids' calculation, but about $267,000 more than Nevada Power's valuation, indicating that the jury did not completely disregard the setback. The jury also valued the property as a whole between 3 Kids' estimate of $85 per square foot and Nevada Power's estimate of $65 per square foot, both for purposes of the calculation of damages based on Nevada Power's taking of the easement and for determining the proper severance damages. Given that these numbers were within the range provided by the experts, we cannot say that the verdict was clearly wrong. We thus conclude that substantial evidence supports the jury's verdict. *Clark Cnty. Sch. Dist.*, 125 Nev. at 384, 213 P.3d at 503.

We suggest the following instruction, or something similar, in cases where a jury is tasked with determining just compensation for a piece of property burdened by a land-use restriction where the jury does not need to disregard the highest and best use of the land:

> In determining the fair market value of the land in which the easement is sought, you are required to value the land as a whole based on its highest and best use and look to the high-

est price which the property would bring in an open market under the conditions of a fair sale. To determine the highest price, you must not focus solely on the condemned portion, but you may consider evidence of land-use restrictions that would influence a prudent purchaser when purchasing the condemned property.

*The district court did not abuse its discretion by allowing 3 Kids' expert's testimony*

Nevada Power also argues that the district court abused its discretion by allowing 3 Kids' expert, Tami Campa, to testify about her paired sales analysis when she did not disclose certain backup data from five property sales used to support her calculation of the proper price per square foot for 3 Kids' parcel. Nevada Power also asserts that the district court should have allowed it to present maps and reports to rebut Campa's testimony. We disagree.

We review a district court's decision to admit expert testimony for a clear abuse of discretion. *In re Mosley*, 120 Nev. 908, 921, 102 P.3d 555, 564 (2004). NRCP 16.1(a)(2)(B) requires an expert's report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data and other information considered by the witness in forming the opinions." While Campa's analysis of the five sales in question was less thorough than other areas of her 160-page report, we conclude that these weaknesses went to the weight of the evidence and not its admissibility. *See Williams v. Eighth Judicial Dist. Court*, 127 Nev. 518, 530-31, 262 P.3d 360, 368 (2011) (noting that concerns about the reliability of expert testimony went to weight, not admissibility). These weaknesses were appropriate topics for cross-examination. Nevada Power had a wide range of unused tools available to address any issues with the report before trial, including motions to compel production of documents, motions in limine, development of a competing paired sales analysis, and vigorous cross-examination. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Therefore, we conclude the district court did not abuse its discretion in permitting Campa's testimony. *Mosley*, 120 Nev. at 921, 102 P.3d at 564.

Nevada Power raises additional issues relating to Campa's testimony. First, Nevada Power argues that the district court should have allowed it to present maps and reports during rebuttal based on the APN numbers Campa provided during 3 Kids' case-in-chief. Due to Campa's imprecise identification of the parcels

she used in her paired sales analysis, Nevada Power guessed which sales she used when developing their own expert report. However, once the APNs were disclosed at trial, Nevada Power realized some of its assumptions were incorrect and attempted to provide rebuttal information based on the actual parcels that Campa used. We conclude that the district court acted within its discretion by refusing to allow Nevada Power to introduce information in rebuttal that was not disclosed prior to trial. NRCP 16.1(a)(3); *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008) (stating that this court "review[s] a district court's decision to admit or exclude evidence for abuse of discretion, and . . . will not interfere with the district court's exercise of its discretion absent a showing of palpable abuse"); *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 492, 117 P.3d 219, 226 (2005) (holding that the trial court has broad discretion to determine the admissibility of evidence). NRCP 16.1(a)(3) requires that rebuttal evidence be provided to other parties at least 30 days before trial, and Nevada Power first produced the maps and report at issue during trial.

Nevada Power also argues that Campa's testimony violated NRS 50.285 because her paired sales analysis lacked verifiable and reliable data relating to the five property sales. NRS 50.285 does not define the type of documentation or data on which experts may rely, however, and does not support Nevada Power's argument. We further conclude that the district court properly denied Nevada Power's request to play a portion of Campa's video deposition at trial as Nevada Power's counsel agreed that he could examine the witness live instead. *See Clark Cnty. v. State*, 65 Nev. 490, 506, 199 P.2d 137, 144 (1948) ("[A] party on appeal cannot assume an attitude . . . inconsistent with . . . that taken at the hearing below.").

## CONCLUSION

We conclude that the district court erred by giving Jury Instruction No. 35, but this error did not prejudice Nevada Power in light of Jury Instruction No. 19. We also conclude that the district court did not abuse its discretion by allowing 3 Kids' expert's testimony and by excluding Nevada Power's rebuttal evidence. We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, we affirm the district court's judgment.

HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY, and SAITTA, JJ., concur.