ARTURO A. GARCIA, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 34168

February 16, 2001                                      17 P.3d 994

*Morgan D. Harris,* Public Defender, and *Gary H. Lieberman,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland* and *Brian S.*

*Rutledge,* Chief Deputy District Attorneys, Clark County, for Respondent.

Before YOUNG, ROSE and BECKER, JJ.

## OPINION

By the Court, ROSE, J.:

### SUMMARY

This case presents the issue of whether a foreign national who was not informed of his consular notification rights after being arrested as required by Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention") may suppress his post-arrest statements. Based on the express provisions of the treaty and the State Department's interpretation of the treaty, we conclude that an Article 36 violation is not of such fundamental or constitutional importance that application of the exclusionary rule is warranted.

## FACTS

On July 26, 1998, several witnesses saw Arturo Andrade Garcia ("Garcia"), a citizen of Mexico, race his automobile down a North Las Vegas street and crash into another vehicle, severely injuring its two occupants. After the accident, witnesses saw Garcia and another Hispanic male crawl from the passenger side of the vehicle and flee. An officer called to the scene found Garcia walking through a nearby parking lot. In order to confirm his identity as the missing driver, the officer asked Garcia several preliminary questions to which Garcia gave inconsistent answers. Garcia was eventually arrested and read his rights under *Miranda*.[1] A blood sample revealed that he was intoxicated at the time of the accident. While he was in custody officers conducted two additional interviews with Garcia, during which Garcia made additional inconsistent and incriminating statements.

The authorities, however, never informed Garcia of his rights as a foreign national or informed the Mexican consulate of his arrest as required by the Vienna Convention. Based on this violation, Garcia moved to suppress all the evidence obtained from him, including his statements and blood samples. The district court denied Garcia's motion and the case proceeded to trial.

Based in part on the investigating officers' testimony about Garcia's post-arrest statements, the jury convicted Garcia on multiple charges arising out of the accident.

## DISCUSSION

Garcia contends that the officers violated the Vienna Convention, a treaty signed and ratified by the United States,[*] by not telling him that he had the right to see and communicate with a Mexican consular representative upon his being arrested. Further, Garcia claims that Vienna Convention violations should be treated like *Miranda* violations requiring suppression of statements made after the violation.[2]

Although there is an initial question as to whether the defen-

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Garcia also suggests that dismissal is an appropriate remedy for a Vienna Convention violation. Dismissal, however, is an extreme remedy used only where there has been irreparable prejudice to the defendant's case. *See State v. Babayan*, 106 Nev. 155, 173, 787 P.2d 805, 818 (1990) ("[D]ismissal with prejudice is warranted when the evidence against a defendant is irrevocably tainted or the defendant's case on the merits is prejudiced to the extent 'that notions of due process and fundamental fairness would preclude reindictment.'" (quoting *United States v. Lawson*, 502 F. Supp. 158, 172 (D. Md. 1980))). In this case, we conclude that there was no irreparable harm or prejudice to Garcia that would prevent a second prosecution. Accordingly, Garcia's argument lacks merit.

dant has standing to enforce his rights under the Vienna Convention, we need not address this issue because we ultimately conclude that even if standing exists, Garcia is not entitled to the remedy for the treaty violation. *See Breard v. Greene,* 523 U.S. 371, 376 (1998) (commenting that the Vienna Convention ''arguably'' creates individually enforceable rights); *United States v. Li,* 206 F.3d 56, 60 (1st Cir. 2000) (noting that regardless of whether individual rights are created by the Vienna Convention, an appellant's claims must fail if the requested remedy of suppression or dismissal is not available for violations).

The determination of whether the Vienna Convention contemplates suppression of evidence as a remedy for a violation is a question of law, which this court reviews de novo. *See Paige v. State,* 116 Nev. 206, 208, 995 P.2d 1020, 1021 (2000) (questions of law are subject to de novo review); *United States v. Page,* 232 F.3d 536, 540 (6th Cir. 2000) (proper interpretation of a treaty is a question of law reviewed de novo).

The Vienna Convention is a multilateral treaty negotiated in 1963 to which both Mexico and the United States are parties. *See* Vienna Convention, April 24, 1963, 21 U.S.T. 77. Upon ratification in 1969, the treaty became the supreme law of the land under Article 6, Clause 2 of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. Article 36 of the treaty provides that a foreign national who is ''arrested or committed to prison or to custody pending trial or is detained in any other manner'' has the right to have his foreign consulate notified and to communicate therewith.[3] Vienna Convention, 21 U.S.T. at 101. Importantly, Article 36 also requires that the arresting authorities ''shall inform the person concerned without delay of [these] rights.'' *Id.*

Historically, the application of the exclusionary rule has typically been reserved for those cases involving the violation of fun-

---

[3]Article 36 provides in part:

> 1.  With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> . . . .
>
> (b) if he [the detained foreign national] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

21 U.S.T. at 100-01.

damental constitutional rights. *See Elkins v. United States,* 364 U.S. 206, 217 (1960) ("[The exclusionary rule's] purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it."); *Mapp v. Ohio,* 367 U.S. 643 (1961) (applying exclusionary rule to states for purposes of Fourth Amendment violations); *Miranda v. Arizona,* 384 U.S. 436 (1966) (applying exclusionary rule to states for purposes of Fifth Amendment violations); *see also* NRS 48.025 (providing that evidence obtained in violation of the Constitution is inadmissible). Thus, the issue here is whether the consular notification rights conferred upon Garcia by the Vienna Convention are of such a fundamental nature that suppression is warranted.

Initially, we note that "the Supremacy Clause does not convert violations of treaty provisions . . . into violations of constitutional rights." *Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir. 1997). Absent an underlying constitutional right, "the exclusionary rule is an inappropriate sanction . . . unless the treaty expressly provides for that remedy." *Page,* 232 F.3d at 540.

Our examination of the provisions of the Vienna Convention, however, reveals no express mention of the remedy of suppression. *See Li,* 206 F.3d at 62-63; *Page,* 232 F.3d at 540. Moreover, there is nothing in the text suggesting that the purpose for Article 36 was to provide rights similar to those guaranteed in *Miranda.* As the Ninth Circuit recently observed, the Vienna Convention: (1) does not "link the required consular notification in any way to the commencement of police interrogation;" (2) does not "require law enforcement officials to cease interrogation once the arrestee invokes his right;" and (3) was drafted three years before the *Miranda* decision. *United States v. Lombera-Camorlinga,* 206 F.3d 882, 886 (9th Cir. 2000). Moreover, the Ninth Circuit noted that the right to counsel and the right against self-incrimination are uniquely American rights that are "by no means universally recognized or enforced." *Id.*

We are also persuaded by the State Department's interpretation of the Vienna Convention. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 168 (1999) ("Respect is ordinarily due the reasonable views of the Executive Branch concerning the meaning of an international treaty."). The State Department has rejected the proposition that Vienna Convention violations warrant evidence suppression or case dismissal, and instead has concluded that the only remedies are diplomatic or political or exist between states under international law. *See Li,* 206 F.3d at 63 (citing

Department of State Answer to the Questions Posed by the First Circuit in *United States v. Nai Fook Li).*

We also note that this reasoning has been adopted by the majority of federal and state courts considering the issue. *See, e.g., Page,* 232 F.3d at 541; *United States v. Chanthadara,* 230 F.3d 1237, 1255-56 (10th Cir. 2000); *United States v. Chaparro-Alcantara,* 226 F.3d 616, 622 (7th Cir. 2000); *United States v. Cordoba-Mosquera,* 212 F.3d 1194, 1195-96 (11th Cir. 2000); *Lombera-Camorlinga,* 206 F.3d at 888; *Li,* 206 F.3d at 66; *People v. Villagomez,* 730 N.E.2d 1173, 1184 (Ill. App. Ct. 2000); *State v. Rosas,* 17 P.3d 379, 386 (Kan. Ct. App. 2000); *State v. Martinez-Lazo,* 999 P.2d 1275, 1278-79 (Wash. Ct. App. 2000).

Garcia also contends that violation of the Vienna Convention is "structural error" requiring automatic reversal of his conviction. Structural error, however, results from a constitutional deprivation that so infects the entire framework of the trial that the result is no longer reliable. *See Arizona v. Fulminante,* 499 U.S. 279, 309-11 (1991). As discussed above, a Vienna Convention violation is not of the constitutional dimension required for structural error.

## *CONCLUSION*

We conclude that the suppression of evidence is not an available remedy for a violation of a defendant's notification rights under the Vienna Convention. We also conclude that a Vienna Convention violation does not amount to structural error warranting automatic reversal. Accordingly, we affirm the district court's order denying Garcia's motion to suppress and affirm his conviction in all other respects.[4]

YOUNG and BECKER, JJ., concur.

---

[4]Garcia raises numerous other arguments on appeal, including issues surrounding: (1) the jurisdiction of the district court; (2) alleged errors with his indictment and the notice it gave as to the State's theory of the case; (3) the pre-trial denial of his writ of habeas corpus; (4) the district court's disallowing him to argue certain theories before the jury; (5) the admission of evidence in violation of *Miranda*; (6) the introduction of several witnesses' in-court identifications; (7) the admission of various witnesses' testimony and of physical evidence in violation of the Nevada rules of evidence; (8) the admission of improper commentary on post-arrest silence; (9) the occurrence of several instances of prosecutorial misconduct; and (10) the inclusion of allegedly improper jury instructions. We have carefully reviewed each of Garcia's contentions and conclude that they all lack merit.