194 P.3d 1214 (2008)
Linda F. COOK and Frank Cook, Individually and as Husband and Wife, Appellants,
v.
SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, Respondent.
Linda F. Cook and Frank Cook, Individually and as Husband and Wife, Appellants,
v.
Sunrise Hospital and Medical Center, LLC, Respondent.
Nos. 47220, 48414.
Supreme Court of Nevada.
October 30, 2008.
*1215 Sterling Law, LLC, and Beau Sterling, Las Vegas; Cobeaga Law Firm and J. Mitchell Cobeaga, Las Vegas, for Appellants.
Hall Prangle & Schoonveld, LLC, and Michael T. Koptik and Lisa D. Parker, Las Vegas, for Respondent.
Before The Court En Banc.

OPINION
By the Court, GIBBONS, C.J.:
These appeals center on a "mere happening" jury instructionan instruction asserting that the mere happening of an accident is, by itself, an insufficient basis for liabilitygiven by the district court in a medical malpractice action. Initially, we must determine whether appellants preserved for our review their objection to respondent's proposed jury instruction. We conclude that appellants' objection to the jury instruction was sufficient to preserve the claimed error for our review because the objection placed the district court on notice that the instruction's language required further review.
Next, we address whether the "mere happening" instruction given by the district court misstated the law, and if the instruction was in fact erroneous, whether appellants have proven that the inaccurate instruction was prejudicial rather than harmless error. The jury instruction given by the district court in this matter set forth that "the mere fact that an unfortunate or bad condition resulted to the patient involved in this case does not prove, or even imply, that by virtue of that fact, the defendant is negligent." This instruction misstated Nevada law because the instruction failed to inform the jury that it could consider all of the circumstances leading to the plaintiff's injury as possible evidence of the defendant's negligence, and thus, the instruction may have confused or misled the jury to its verdict. Given this conclusion, we also must consider whether appellants have proven that the inaccurate instruction was prejudicial rather than harmless error. After reviewing the evidence, we conclude that prejudice was shown because, but for the mistake in instructing the jury, it is probable that a different result may have been reached as the case was close and appellants introduced evidence that could support a finding of negligence against respondent.
Because the given jury instruction misstated the law, which could have confused or misled the jury, and appellants have met their burden of showing prejudice, we reverse the district court's judgment and remand this matter to the district court for a new trial. We also vacate the district court's order awarding costs and fees to respondent since we have reversed the judgment upon which this award was based.

FACTS AND PROCEDURAL HISTORY
In January 2000, appellant Linda Cook underwent back surgery at Sunrise Hospital. Dr. Mark B. Kabins, who was assisted by Dr. John A. Ameriks, a neurovascular surgeon, performed the surgery. During the surgery a blood clot formed in Mrs. Cook's left leg, and complications related to the blood clot arose, ultimately leading to the amputation of Mrs. Cook's lower left leg. She and her husband, Frank Cook, filed a medical malpractice action against respondent Sunrise Hospital and Dr. Ameriks, asserting that their negligence in identifying and treating the complications that arose during and after surgery caused the loss of Mrs. Cook's leg.[1] Specifically, the Cooks alleged that (1) Sunrise's *1216 failure to provide specific requested equipment prevented Dr. Ameriks from properly treating Mrs. Cook's limb and increased the time her vessels were without oxygen; (2) hospital equipment, a "Quantum" operating table, interfered with the ability to obtain adequate diagnostic imaging of Mrs. Cook's lower leg; (3) because Sunrise failed to provide adequate equipment, Sunrise's medical care fell below the standard of care; and (4) Sunrise fell below the standard of care when, despite the assurance by its hospital staff, an angiography suite was not made available, increasing the harm to Mrs. Cook's limb.
The case ultimately proceeded to a jury trial. After Sunrise rested its case, the district court held a hearing to settle the jury instructions. At the hearing, Sunrise proffered an instruction that stated, in relevant part, "The mere fact that an unfortunate or bad condition resulted to the patient involved in this case does not prove, or even imply, that by virtue of that fact, the defendant was negligent." The Cooks objected to the instruction, arguing that because they presented evidence of Sunrise's negligence, this case's facts did not warrant the so-called mere happening instructionan instruction based on this court's statement in Gunlock v. New Frontier Hotel[2] that the mere fact that an accident occurred is "not of itself sufficient to predicate liability." Moreover, the Cooks asserted that, even if this case was appropriate for a Gunlock-based jury instruction, Sunrise's proposed jury instruction misstated the law set forth in Gunlock.
In response to the Cooks' objections, Sunrise's counsel asserted that the instruction was proper because, as the Cooks' opening argument stated, the issue to be decided by the jury was "who is responsible." According to Sunrise, the purpose of its proposed instruction was to remind the jury that the mere happening of a bad result does not mean that anyone is responsible. Moreover, Sunrise reminded the district court that something more than an accident and consequent injury was required to demonstrate negligence, particularly when the Cooks' expert had repeatedly testified that one risk associated with this type of surgery was the loss of limbs resulting from a risk of damage to arteries and veins. Sunrise further argued that if the court refused to give its proposed instruction, it would support the Cooks' argument that simply because something bad happened, someone must be held accountable, but, Sunrise asserted, the Cooks were required to prove that negligence occurred.
Following these arguments, the district court concluded that the jury instruction was a correct statement of the law. Again, the Cooks' counsel objected stating that the proposed instruction was not an accurate Gunlock instruction.
The jury returned a quotient verdict, six to two, in favor of Sunrise, upon which the district court entered judgment and later awarded costs. These consolidated appeals followed.

DISCUSSION

The Cooks' objection to the proposed instruction
As an initial matter, Sunrise contends that, on appeal, the Cooks have waived their challenge to the jury instruction because a proper objection to the jury instruction was not raised in the district court. The Cooks assert that their objection sufficiently preserved the issue for our review because their counsel's statement that the proffered language was not "an appropriate [Gunlock] instruction" put the district court on notice that Sunrise's language should have been reviewed further.
With regard to the proper manner of objecting to a proposed jury instruction so that the challenge is preserved for appellate review, NRCP 51(c) provides that a party objecting to an instruction, or the failure to give an instruction, must "distinctly" state the matter objected to and the grounds for the objection. Objections are sufficient when they serve NRCP 51(c)'s purpose to give the trial court the opportunity to correct the potential error by focusing the court's attention *1217 on the alleged error.[3] This does not require that counsel give a discourse on the applicable law.[4] Indeed, we have held that providing the district court with a citation to relevant legal authority in support of the objection satisfies the requirements of NRCP 51(c).[5] A general objection, however, is not sufficient to preserve the issue on appeal, unless there is plain error.[6]
In this case, at the hearing to settle the jury instruction, the Cooks objected to Sunrise's proposed instruction because it was not a proper "mere happening" instruction under this court's 1962 opinion, Gunlock v. New Frontier Hotel,[7] The Cooks' counsel stated twice that the proffered language was not a proper Gunlock instruction. Moreover, the Cooks' objection, together with Sunrise's argument, informed the district court what the main issue for the jury's determination was who was responsible for the loss of Mrs. Cook's limb. Thus, the district court was on notice that the language of Sunrise's proposed jury instruction should have been reviewed further, and the court was provided with a citation to pertinent authority. The need for further review should have been particularly evident, because Gunlock is a Nevada Supreme Court case and, as Sunrise acknowledged to the district court, its given instruction was based on a South Dakota Supreme Court case.[8]
Sunrise's argument that the Cooks' objection was not adequately preserved because they were required to specifically state to the district court the exact language that should have been added is unpersuasive, since under NRCP 51(c), the Cooks' objection needed only to focus the district court's attention on the alleged error, which it did. Accordingly, the Cooks' objection to giving the "mere happening" instruction was properly preserved for appeal.

Jury instruction was misstatement of Nevada law
Having concluded that the Cooks properly preserved the jury instruction issue for our review, we next consider whether the proffered instruction was a misstatement of the law. We review de novo the claimed error that a proffered instruction is an incorrect statement of the law.[9]
Here, the Cooks' theory of liability against Sunrise rested on Sunrise's alleged negligence in failing to provide adequate equipment, as requested by Mrs. Cook's treating doctors, and its staff's failure to follow doctors' orders, which ultimately resulted in the loss of Mrs. Cook's leg.
As stated, the district court instructed the jury that "the mere fact that an unfortunate or bad condition resulted to the patient involved in this case does not prove, or even imply, that by virtue of that fact, the defendant *1218 is negligent." As also stated, in Gunlock, this court reiterated negligence principles that have later been utilized in a "mere happening" instruction:
The mere fact that there was an accident or other event and someone was injured is not of itself sufficient to predicate liability. Negligence is never presumed but must be established by substantial evidence.[10]
Relying on Gunlock, this court in Carver v. El-Sabawi[11] approved language for a "mere happening" instruction when coupled with a "res ipsa loquitur" instruction. In Carver, the appellant suffered a nerve injury to his left arm sometime during or after an appendectomy, and he sued the anesthesiologist and surgeon.[12] The district court gave the jury a "mere happening" instruction that primarily tracked language found in Gunlock and also gave a res ipsa loquitur instruction based on NRS 41A.100(1)(d).[13] This court held that the portion of the "mere happening" instruction stating that negligence is never presumed must be deleted when a res ipsa loquitur instruction is also given. But this court nevertheless retained the instruction's language stating that the happening of an event with negative consequences is not "of itself" sufficient to establish liability.[14] Rather, the defendant's negligence must be established by substantial evidence, which this court has defined as evidence that "a reasonable mind might accept as adequate to support a conclusion."[15] Accordingly, if jurors might reasonably accept the evidence that Sunrise unreasonably failed to provide adequate equipment for the physicians and that its employees unreasonably failed to follow doctors' orders as evidence that Sunrise was negligent, the jury should have been informed and permitted to consider such evidence in light of all the other evidence presented.
The Cooks assert that the instruction given in their case is similar to the instruction given in Green v. Castronova,[16] an Ohio case, and Kennelly v. Burgess,[17] a Maryland case. In both, appellate courts reversed the judgments based upon incorrect statements of law in jury instructions, which could have been cured by modifying language.[18] In Green, the Ohio trial court instructed the jury in a personal injury action that the mere happening of an accident was "no evidence whatsoever" of negligence.[19] The Green court held that the instruction went "beyond saying that no presumption of negligence arises from the mere happening of an accident."[20] In fact, the instruction admonished the jury that it could not consider the happening of the accident as evidence. Likewise, in Kennelly, the court instructed the jury that an unsuccessful result following medical treatment was "not evidence" of negligence.[21] The Maryland Court of Appeals held that the instruction as given negated the evidentiary value of the physician's actions during the surgical procedure.[22]
*1219 In Fjerstad v. Knutson, the South Dakota decision upon which the "mere happening" instruction given below was based, the instruction provided, in part, that "the mere fact that an unfortunate or bad condition resulted to the decedent . . . does not prove or even imply, that the defendants . . . by virtue of that fact alone, were negligent."[23] But here the instruction given removed the word "alone." Thus, as phrased, the language of the instruction in this case does not embody a complete statement of negligence principles even under the foreign authority relied upon. Certainly, the meaning of the Fjerstad instruction changes when the word "alone" is removed. And, a correct statement of this principle would merely inform the jury that something more, or in addition to, the bad event is needed to support a claim of negligence against the defendant. The instruction here, on the other hand, informs the jury that the resulting loss of Mrs. Cook's limb does not prove or even imply that because the surgery ended tragically, Sunrise is negligent. Without the term "alone," the jury is not clearly informed that it can consider the mere happening of the event, together with other evidence, in determining whether Sunrise was in any way negligent. Thus, the instruction here contains an improper statement of the law, and the district court erred in not amending Sunrise's proposed instruction to accurately reflect our "mere happening" instruction language under Gunlock, or Fjerstad, which is actually in harmony with Gunlock.[24]

Prejudicial error established
Notwithstanding the incorrect statement of law in the jury instruction in this case, reversal of the district court's judgment is not warranted unless the error was prejudicial.[25] To determine whether an error is prejudicial, this court has articulated at least two standards. Specifically, in Peterson v. Silver Peak,[26] we explained that reversible error occurs when the error substantially affects the rights of the complaining party. Subsequently, however, in Pfister v. Shelton,[27] we stated that a judgment's reversal based on an erroneous instruction is not warranted unless the "`error has resulted in a miscarriage of justice.'"[28]
But, regardless of the language employedwhether "miscarriage of justice" or "affecting substantial rights"what is clear from our caselaw is that prejudice must be established in order to reverse a district court judgment; it is not presumed and is established by providing record evidence showing that, but for the error, a different result might have been reached.[29] Indeed, in Truckee-Carson Irrigation District v. Wyatt, we noted that prejudicial error was error that constituted a miscarriage of justice and that to determine whether a miscarriage of justice occurred the "record must be considered as a whole" to resolve whether absent the district court's error it is probable a different result may have been reached.[30] Similarly, in Boyd v. Pernicano,[31] when deciding whether the error complained ofan attorney's improper statement, the objection to which was overruledwas prejudicial error, we held that it was not prejudicial because upon consideration of the record the error did not affect a substantial right of the *1220 party because it was not probable that a different result might have been reached absent the error.
In Driscoll v. Erreguible,[32] we did not use either articulation to describe prejudice when we were asked to resolve whether a district court's erroneous instruction in response to the jury's request for clarification of an instruction constituted prejudicial error. We continued to recognize, however, that whether an erroneous jury instruction is prejudicial is determined based on a review of the record, noting that generally the appellate record must contain evidence that a different result might have been reached absent the error at issue.[33] And, recently, in Carver, we considered whether the giving of a "mere happening" instruction along with a "res ipsa loquitur" instruction was so conflicting as to constitute prejudicial error.[34] In resolving the issue in Carver, we reiterated that prejudice is met when, based on a showing of sufficient-record evidence, a party establishes that a different result might have been reached were it not for the district court's error.[35] In that regard, we clarify Carver to the extent that it may be construed as changing the complaining party's burden of proof on appeal or to the extent that it could imply that a superficial presentation of record evidence is sufficient; such is not the case. Thus, to reverse a district court judgment based on an erroneous jury instruction, prejudicial error must be established.[36] This is accomplished when the complaining party demonstrates that the error substantially affected the party's rights.[37] That standard is met when the complaining party provides sufficient-record evidence showing that, but for the error, a different result might have been reached.[38]
In this appeal, the Cooks cite specific expert testimony that they contend shows that they were prejudiced by the improper instruction. For example, they presented expert testimony that Sunrise was negligent because it failed to make available a fluoroscopy machine, also called a "C-arm," with vascular imaging software. According to the Cooks, this failure to provide the requested imaging equipment increased the time Mrs. Cook's vessels were without oxygen. Additionally, Mrs. Cook's medical records indicate, and Dr. Ameriks testified, that he also encountered problems with obtaining images of Mrs. Cook's lower limb due to the C-arm's inability to navigate around the operating table's center post. Without these additional images, Dr. Ameriks testified that he could not visualize the necessary vessels to determine whether there were additional blood clots. According to Dr. Ameriks and the Cooks' expert, Dr. Bruce Hirschfeld, this failure to provide adequate equipment severely hampered Dr. Ameriks' ability to treat the loss of blood flow and delayed the treatment of Mrs. Cook's leg.
Sunrise's experts, however, testified that a plain x-ray film was sufficient to obtain the additional images needed by Dr. Ameriks. Those experts also testified that there were other options available to Dr. Ameriks to get around the table's center post, if Dr. Ameriks was truly concerned with obtaining additional images.
The Cooks also presented expert testimony that Dr. Ameriks' decision to close Mrs. Cook's wound sites and monitor her condition was reasonable. In particular, based on Mrs. *1221 Cook's small vessels and the fact that Dr. Ameriks had established blood flow to a portion of the body that he could visualize by x-ray, Dr. Ameriks' believed that it was possible that the vessels in her lower limb had merely constricted due to spasms. As a result, Dr. Ameriks made the decision to close the wound sites and monitor Mrs. Cook's condition. Sunrise's expert, Dr. Fred Littooy, a vascular surgeon, agreed that it was reasonable for Dr. Ameriks to close Mrs. Cook's wound sites based on the situation presented to Dr. Ameriks during his first attempt at revascularization.
Yet, Dr. Robert Wagmeister, a vascular surgeon who also testified on behalf of Sunrise, concluded that Dr. Ameriks' decision to close the wound sites fell below the standard of care. Specifically, Dr. Wagmeister testified that Dr. Ameriks should have performed further exploration to determine why there were no pulses in Mrs. Cook's lower limb before he closed. Additionally, Dr. Wagmeister testified that the absence of Doppler signals[39] was an indication that the vessels were not in spasm.
Additionally, the Cooks introduced testimony that despite a request and a subsequent assurance by a Sunrise nurse that an angiography suite would be made available, Sunrise's employees failed to make the suite available. Likewise, Dr. Ameriks testified and Mrs. Cook's medical records showed that despite a second request for the angiography suite, Sunrise's staff informed Mrs. Cook's surgeons that the angiography suite was unavailable. Vickie Gooss, Director of Imaging at Sunrise, testified, however, that there were no procedures being conducted in the angiography suite at the time that the surgeons had requested it. And she testified that if a nurse had been told that it was available, but then informed the surgeons that it was not, that was incorrect. According to the Cooks, this failure contributed to the loss of Mrs. Cook's limb because Dr. Ameriks testified that he would not have closed Mrs. Cook's wound sites if he had known that the angiography suite was not going to be available for further diagnostic imaging.
Further, the Cooks presented evidence that had the angiography suite been available it would have taken the angiography team between a half hour to one hour to image Mrs. Cook's limb, thereby providing Dr. Ameriks with a specific diagnosis and location of the problem. Moreover, with respect to making the angiography suite available, Sunrise's experts conceded that if an order for the angiography suite had been made, then noncompliance with that order meant the hospital fell below the standard of care.
Sunrise's experts, however, asserted that while in the recovery room, Mrs. Cook's condition presented an emergency situation that required immediate intervention, not an angiogram in the angiography suite. These experts testified that if Mrs. Cook had been taken to the angiography suite first, it would have merely increased the time that her vessels were without oxygen. Sunrise also countered with medical expert testimony that Dr. Ameriks knew what the problem was, and even after the imaging was completed in the angiography suite, it still would have been necessary to move Mrs. Cook to the operating room to revascularize her limb.
Here, the Cooks provided evidence showing that the issue of liability was close. Specifically, the Cooks presented evidence suggesting that Sunrise was negligent or at least creating a close question of fact for the jury, the jury was improperly instructed, and the jury rendered a quotient verdict, six to two.[40] Thus, had the proper jury instruction been given, it is probable that a different result might have been reached by the jury. Accordingly, we conclude that the Cooks have met their burden of showing from the record *1222 that prejudice resulted from the misstatement of law in the jury instruction because absent that mistake it is probable that a different verdict might have resulted.

CONCLUSION
Because the Cooks sufficiently objected to Sunrise's proposed "mere happening" instruction by advising the court that its language did not comport with our decision in Gunlock v. New Frontier Hotel,[41] the Cooks adequately preserved their objection for our review. Since the proposed instruction failed to inform the jury that they could take into account evidence of Sunrise's alleged negligence in determining liability, and the Cooks demonstrated that prejudice resulted from the giving of the misstated jury instruction, we agree that the Cooks are entitled to a new jury trial. Accordingly, we reverse the district court's judgment and we remand this matter to the district court for a new trial. We also conclude that the district court order awarding costs must also be reversed.
We concur: DOUGLAS, C.J., and CHERRY and SAITTA, JJ.
HARDESTY, J., with whom MAUPIN and PARRAGUIRRE, JJ., agree, concurring in part and dissenting in part:
I agree with the majority that the district court improperly instructed the jury because the "mere happening" jury instruction given was an incomplete statement of the law. I do not, however, agree with the majority that the error committed by the district court was prejudicial to the Cooks because, under the particular circumstances of this case, it is not probable that a different result might have been reached even if the instruction at issue included the word "alone."
Although the majority suggests that there is a sharp degree of conflict in the evidence presented on appeal that presents the possibility of a different verdict if an accurate instruction had been given, in my view, the evidence does not demonstrate that it is probable that a different result might have been reached. Credibility issues were raised when bias testimony was elicited concerning Drs. Ameriks, Kabins, and Hirschfeld, which the jury weighed in its decision. From the evidence presented, the jury apparently rejected testimony regarding whether specific imaging equipment had actually been requested and whether the angiography suite had been ordered and a subsequent assurance given that it would in fact be available. Even if the imaging equipment and angiography suite truly had been ordered and made available to Mrs. Cook's physicians, sufficient expert testimony was presented at trial to support the jury's verdict, and substantial evidence supported that Mrs. Cook's own medical condition contributed to her unfortunate loss. I believe that despite the district court's incomplete instruction, the jury was properly instructed on the medical malpractice elements required to be proven by the Cooks, and the jury apparently rejected the Cooks' evidence.
Sunrise elicited testimony from Dr. Hirschfeld that he was friends of and socialized with Dr. Kabins and had assisted Dr. Kabins in prior surgeries. Dr. Hirschfeld also testified that he had been partners with Dr. Ameriks for nine years.
The record on appeal further shows that from the evidence presented at trial, the jury could have concluded that Drs. Ameriks and Kabins lacked credibility in their account of the events surrounding Mrs. Cook's treatment. Despite these physicians' claim that more sophisticated imaging equipment was requested and denied, and that an order was made for the angiography suite with an assurance given that it would be prepared, Drs. Ameriks and Kabins failed to note these requests in Mrs. Cook's hospital records. The physicians claimed that Sunrise's policy prevented them from noting such issues in patient records, however, Drs. Ameriks and Kabins testified that their private office records also lacked any discussion of purported equipment requests even though the hospital had no control over those records. While Drs. Ameriks and Kabins have previously complained when equipment was not up to standards, according to Sunrise's staff, no verbal or written complaints related to an *1223 alleged inability to adequately treat Mrs. Cook were brought to Sunrise's attention by either physician. Sunrise's staff further testified that sufficient and adequate equipment was available to meet Dr. Ameriks' imaging needs during the first revascularization attempt, if he truly needed additional images and had actually asked for more sophisticated equipment than the portable x-ray machine that was used.
Dr. Kabins' credibility was further questioned when it was suggested that Dr. Kabins waited until his deposition was taken to disclose the circumstances surrounding the order for the angiography suite. Following that deposition testimony, the Cooks' attorney informed Dr. Hirschfeld, the Cooks' expert, that Dr. Kabins had provided "the missing link" at his deposition.
The jury may also have concluded that Dr. Hirschfeld's expert opinion lacked credibility. On cross-examination, Dr. Hirschfeld testified that for purposes of evaluating liability, the Cooks did not provide him with a copy of Dr. Ameriks' 2002 affidavit, Sunrise's witnesses' depositions, the computerized schedule for the angiography suite in question, the C-arm inventory list (which showed what equipment Sunrise had in stock and was potentially available at the time), Mrs. Cook's deposition, and Mrs. Cook's x-rays. Dr. Hirschfeld, however, based his expert opinion, in part, on conversations he had with Drs. Kabins and Ameriks shortly before trial.
Thus, there appears to have been credibility issues surrounding Drs. Kabins', Ameriks', and Hirschfeld's testimony that were more appropriately weighed by the jury, rather than this court. Accordingly, in weighing the evidence and witnesses' credibility, the jury apparently rejected these physicians' testimony on these points.[1]
I also disagree with the majority's decision to reverse the jury's verdict because it does not appear that the question of liability was close in this case. Even if Dr. Kabins had ordered the angiography suite during the first revascularization attempt, Sunrise's experts testified that taking Mrs. Cook to the angiography suite first would have merely increased the time her vessels were without oxygen, thereby increasing the potential damage to her limb. It was undisputed that the therapeutic interventions capable of being performed in the angiography suite, as described by the Cooks' expert, Dr. Hirschfeld, were not considered by Dr. Ameriks in deciding to order the angiography suite. Indeed, Dr. Ameriks testified that the only reason to move Mrs. Cook to the angiography suite was to image her limb for diagnostic purposes. And Sunrise's experts testified that, even after completing this diagnostic exam, which was unnecessary because Dr. Ameriks knew what the problem was, Mrs. Cook still needed to go to the operating room; the only thing that could have been accomplished by using the angiography suite first would have been to increase the ischemia time.
Additional evidence relevant to the jury's consideration of proximate cause was Mrs. Cook's medical condition. Dr. Ameriks testified that Mrs. Cook's small vessels and preexisting polio condition decreased the window of opportunity to revascularize Mrs. Cook's limb and likely resulted in more permanent damage to her than to an average individual. And despite placing blame on Sunrise and its staff for Mrs. Cook's resulting injury, Dr. Hirschfeld testified that Mrs. Cook's medical condition also contributed to the loss of her limb. In particular, Mrs. Cook had a history of polio, smoked for years, suffered from hypertension, and had moderate to severe atherosclerosis in her lower left leg, which was revealed by a pathological examination of the amputated limb. These preexisting conditions made it difficult for the surgeons to treat Mrs. Cook's limb.
Following the close of all the evidence and counsels' arguments, the jury was given various instructions. Specifically, the jury was instructed to consider all the instructions as a whole and in light of the others and to draw all reasonable inferences from the evidence; it was also instructed on proximate cause and concurrent causes and the medical *1224 malpractice elements that the Cooks were required to establish. The jury was also instructed on a hospital's standard of care. With these instructions, including the incomplete "mere happening" jury instruction, and considering the above evidence, in my view, the Cooks have not shown the probability of a different result in the absence of a more specifically worded "mere happening" instruction.[2]
As the record shows that prejudicial error has not been established because a different result might not have been reached even if the district court had modified the instruction at issue to include the word "alone," and the jury was otherwise properly instructed, I would affirm the district court's judgment entered upon the jury's verdict.
We concur: MAUPIN and PARRAGUIRRE, JJ.
NOTES
[1] By the time of trial, Dr. Ameriks had settled with appellants and is not a party to this appeal.
[2] 78 Nev. 182, 185, 370 P.2d 682, 684 (1962).
[3] See, e.g., Johnson v. Egtedar, 112 Nev. 428, 435, 915 P.2d 271, 275, (1996) (concluding that NRCP 51's requirements were satisfied when appellant's objection, respondent's initial objection to the court, and a review of the record revealed that the district court was adequately apprised of the issue of law involved and had an opportunity to correct the error); Barnes v. Delta Lines, Inc., 99 Nev. 688, 669 P.2d 709 (1983) (noting that providing the district court with a citation to relevant legal authority, despite no extensive legal arguments taking place in support of giving a jury instruction, satisfied NRCP 51(c)'s requirements).
[4] Barnes, 99 Nev. at 691 n. 1, 669 P.2d at 710 n. 1.
[5] Id.; see, e.g., Tidwell v. Clarke, 84 Nev. 655, 660, 447 P.2d 493, 496 (1968) (providing that when counsel timely calls the court's attention to the issues of law, a slight omission in compliance with NRCP 51 will not preclude appellate review); Otterbeck v. Lamb, 85 Nev. 456, 460, 456 P.2d 855, 858 (1969) (providing that in the heat of trial, counsel "cannot be expected to respond with all the legal niceties and nuances of a brief writer").
[6] Johnson, 112 Nev. at 434, 915 P.2d at 275.
[7] 78 Nev. 182, 370 P.2d 682 (1962).
[8] Fjerstad v. Knutson, 271 N.W.2d 8, 14 n. 9 (S.D.1978) (giving an instruction that stated, in part, that "the mere fact that an unfortunate or bad condition resulted to the decedent . . . does not prove or even imply, that the defendants . . . by virtue of that fact alone, were negligent"), overruled on other grounds by Shamburger v. Behrens, 380 N.W.2d 659 (S.D.1986).
[9] Nay v. State, 123 Nev. ___, ___, 167 P.3d 430, 433 (2007); Dewey v. Redevelopment Agency of Reno, 119 Nev. 87, 64 P.3d 1070 (2003); Garcia v. State, 117 Nev. 124, 127, 17 P.3d 994, 996 (2001).
[10] Gunlock, 78 Nev. at 185, 370 P.2d at 684 (emphasis added).
[11] 121 Nev. 11, 107 P.3d 1283 (2005).
[12] Id. at 13, 107 P.3d at 1284.
[13] Id.; see also NRS 41A.100(1)(d) (providing that standard-of-care evidence proving causation of the alleged personal injury or death is not required, and a rebuttable presumption that negligence occurred exists, when evidence is presented that the injury or death occurred during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto).
[14] Carver, 121 Nev. at 16, 107 P.3d at 1286.
[15] Yamaha Motor Co. v. Arnoult, 114 Nev. 233, 238, 955 P.2d 661, 664 (1998) (internal citations omitted).
[16] 9 Ohio App.2d 156, 223 N.E.2d 641 (1966).
[17] 337 Md. 562, 654 A.2d 1335 (1995).
[18] Green, 223 N.E.2d at 648; Kennelly, 654 A.2d at 1341.
[19] Green, 223 N.E.2d at 645.
[20] Id. at 646.
[21] Kennelly, 654 A.2d at 1341.
[22] Id. at 1341; cf. Wild v. Alster, 377 F.Supp.2d 186, 191 (D.D.C.2005) (providing that the use of "simply" and "alone" in its "mere happening" instruction was proper because those words informed the jury that something more than the bad event was necessary to establish negligence).
[23] 271 N.W.2d 8, 14 n. 9 (S.D.1978), overruled on other grounds by Shamburger v. Behrens, 380 N.W.2d 659 (S.D.1986).
[24] It appears that omission of the word "alone" was an act of design by counsel for Sunrise. We admonish counsel with regard to like conduct in the future.
[25] Mainor v. Nault, 120 Nev. 750, 768, 101 P.3d 308, 320 (2004) (providing that an erroneous jury instruction is reviewed "for prejudicial error in light of the evidence"); cf. NRCP 61 (defining harmless error as that which does not affect a party's substantial rights).
[26] 37 Nev. 117, 138, 140 P. 519, 527 (1914).
[27] 69 Nev. 309, 250 P.2d 239, 239 (1952).
[28] Id. at 310, 250 P.2d at 239 (quoting Shuey v. Asbury, 5 Cal.2d 712, 55 P.2d 1160, 1161 (1936)).
[29] Pfister, 69 Nev. 309, 250 P.2d 239; Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 667, 448 P.2d 46, 50 (1968); Driscoll v. Erreguible, 87 Nev. 97, 102, 482 P.2d 291, 294 (1971); Carver v. El-Sabawi, 121 Nev. 11, 15, 107 P.3d 1283, 1285 (2005).
[30] Wyatt, 84 Nev. at 666-68, 448 P.2d at 49-50.
[31] 79 Nev. 356, 385 P.2d 342 (1963).
[32] 87 Nev. 97, 101, 482 P.2d 291, 294.
[33] Id. at 101-02, 482 P.2d at 294. Although only a partial record was provided on appeal in Driscoll, a significant probability existed that a different judgment would have ensued based on the jury's deadlocked deliberation coupled with the fact that a rapid verdict was issued following the district court's erroneous instruction. Id.
[34] 121 Nev. at 13, 107 P.3d at 1284.
[35] Id. at 15, 107 P.3d at 1285.
[36] Mainor v. Nault, 120 Nev. 750, 768, 101 P.3d 308, 320 (2004).
[37] Carver, 121 Nev. at 14-15, 107 P.3d at 1285; Driscoll, 87 Nev. at 101-02, 482 P.2d at 294; Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 666-68, 448 P.2d 46, 49-50 (1968); Boyd v. Pernicano, 79 Nev. 356, 360, 385 P.2d 342, 344 (1963); Peterson v. Silver Peak, 37 Nev. 117, 138, 140 P. 519, 527 (1914).
[38] Carver, 121 Nev. at 15, 107 P.3d at 1285; Driscoll, 87 Nev. at 102, 482 P.2d at 294; Wyatt, 84 Nev. at 666-67, 448 P.2d at 50.
[39] Dr. Littooy testified that a Doppler is an ultrasound device that is used to intonate the blood vessels and if the blood cells are flowing through the vessels a sound is deflected off the cells and can be heard.
[40] See Boyd, 79 Nev. at 359, 385 P.2d at 343 ("If there appears to be a sharp conflict in the evidence upon essential issues the error is treated as having more significance in the jury's decisional process than if the case is a one-sided affair."); cf. Pfister v. Shelton, 69 Nev. 309, 311, 250 P.2d 239, 240 (1952) (providing that without a record on appeal this court cannot examine the existence or degree of conflict in the evidence).
[41] 78 Nev. 182, 370 P.2d 682 (1962).
[1] See Barrett v. Baird, 111 Nev. 1496, 1503, 908 P.2d 689, 694 (1995) (providing that jurors are free to reject or accept an expert's opinion), overruled on other grounds by Lioce v. Cohen, 124 Nev. ___, 174 P.3d 970 (2008).
[2] Cf. El Cortez Hotel Inc. v. Coburn, 87 Nev. 209, 212, 484 P.2d 1089, 1091 (1971) (providing that although the district court's comment on counsel's closing argument was an incomplete statement of the law, reversal was not warranted when the jury was also instructed on proximate cause and told to consider all the jury instructions together); see also Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 667, 448 P.2d 46, 50 (1968) (providing that there is a "presumption of integrity of verdicts in civil cases").