133 Nev., Advance Opinion 84

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

THOMAS KNICKMEYER,
Appellant,
vs.
THE STATE OF NEVADA, ex. rel.
EIGHTH JUDICIAL DISTRICT COURT,
Respondent.

No. 71372

**FILED**

NOV 16 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition to set aside an arbitration order. Eighth Judicial District Court, Clark County; Nancy Becker, Senior Judge.

*Affirmed.*

Kirk T. Kennedy, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Clark G. Leslie, Chief Deputy Attorney General, Carson City; D. Randall Gilmer, Senior Deputy District Attorney, Las Vegas,
for Respondent.

BEFORE TAO and GIBBONS, JJ.[1]

---

[1]The Honorable Abbi Silver, Chief Judge, voluntarily recused herself from participation in the decision of this matter.

17-902420

*OPINION*

By the Court, TAO, J.:

The principal legal question addressed in this appeal is whether certain provisions of NRS Chapter 289 (namely, NRS 289.040, 289.057 and 289.060), intended to provide job-related protections to peace officers employed by law enforcement agencies, apply to bailiffs and marshals employed by the Eighth Judicial District Court. We conclude that judicial marshals are "peace officers" within the meaning of those statutes, but the Eighth Judicial District Court is not a "law enforcement agency" as statutorily defined. Accordingly, the provisions at issue do not apply to Knickmeyer, and we affirm the district court's denial of his petition to set aside the arbitration award in this case.

*FACTUAL AND PROCEDURAL HISTORY*

The Eighth Judicial District Court (EJDC) employed Thomas Knickmeyer first as a bailiff, and then later as an administrative marshal. Knickmeyer's employment was governed by the terms of a written Memorandum of Understanding (MOU) between the Clark County Marshal's Union and the EJDC which stipulated that adverse employment actions, including possible termination, were to be resolved through a series of administrative proceedings, eventually culminating in a binding arbitration hearing if necessary.

The EJDC sought to terminate Knickmeyer's employment after co-workers reported several incidents of insubordination, vulgar language, and unprofessional behavior. The allegations included reports that Knickmeyer used foul language in the presence of a co-worker, publicly referred to an attorney who had complained about him as a "bitch," and retaliated against her by ordering that her purse be searched

and re-scanned even after being told it contained no suspicious items. He also openly used an obscenity to refer to a superior officer. In seeking termination, the EJDC noted that Knickmeyer had previously been subject to lesser disciplinary actions in 1997, 2003, and 2013.

During the various administrative proceedings below, every hearing officer agreed that termination was appropriate and warranted. Knickmeyer appealed each step as outlined in the MOU, ultimately seeking arbitration. The arbitrator upheld the EJDC's decision to terminate Knickmeyer, finding that a preponderance of the evidence demonstrated that Knickmeyer committed the infractions in question and that termination was an appropriate response. The arbitrator's decision specifically noted that his conclusion was based only upon the immediate incidents at stake and not upon the previous complaints from 1997, 2003, or 2013.

Knickmeyer petitioned the district court to set aside the arbitrator's decision, arguing that the EJDC violated his statutory rights under NRS Chapter 289 by improperly disclosing and relying upon his prior disciplinary history as justification for termination in this case. The district court denied the petition, and Knickmeyer appeals, repeating the same arguments made to the district court.

*ANALYSIS*

This court reviews a district court decision to confirm an arbitration award de novo. *Thomas v. City of N. Las Vegas*, 122 Nev. 82, 97, 127 P.3d 1057, 1067 (2006). But the scope of the district court's review of an arbitration award (and, consequently, our own de novo review of the district court's decision) is extremely limited, and is "nothing like the scope of an appellate court's review of a trial court's decision." *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 695, 100 P.3d 172,

176 (2004). "A reviewing court should not concern itself with the 'correctness' of an arbitration award and thus does not review the merits of the dispute." *Bohlmann v. Printz*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (2004) (quoting *Thompson v. Tega-Rand Int'l.*, 740 F.2d 762, 763 (9th Cir. 1984)), *overruled on other grounds by Bass-Davis v. Davis*, 122 Nev. 442, 452 n.32, 134 P.3d 103, 109 n.32 (2006).

Rather, when a contractual agreement mandates that disputes be resolved through binding arbitration, courts give considerable deference to the arbitrator's decision. Judicial review is limited to inquiring only whether a petitioner has proven, clearly and convincingly, that one of the following is true: the arbitrator's actions were arbitrary, capricious, or unsupported by the agreement; the arbitrator manifestly disregarded the law; or one of the specific statutory grounds set forth in NRS 38.241(1) was met. *Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 341, 131 P.3d 5, 8 (2006); *Health Plan of Nev.*, 120 Nev. at 695, 100 P.3d at 176.

In this appeal, Knickmeyer asserts that the EJDC violated his due process rights by failing to comply with certain provisions of NRS Chapter 289 relating to discovery. He also contends that the arbitrator manifestly disregarded relevant law and exceeded his authority by determining that Knickmeyer's conduct violated standards not articulated within the MOU and by failing to make required findings of reasonableness.[2]

---

[2]Knickmeyer's brief also includes two other arguments that we need not separately address. He contends that the MOU itself imposed contractual discovery obligations above and beyond those set forth in NRS Chapter 289, but this argument is presented only cursorily and is less
*continued on next page...*

*NRS Chapter 289*

Knickmeyer first argues that his statutory rights under NRS Chapter 289 were violated because he was not provided with discovery relating to three prior disciplinary incidents (from 1997, 2003, and 2013) that were used against him during the arbitration, in violation of the requirements of NRS 289.040, NRS 289.057, and NRS 289.060.

As an initial observation, however, Knickmeyer waived this objection by failing to ever request any such discovery below or object to any failure to receive it to the arbitrator. *See Carrigan v. Comm'n on Ethics*, 129 Nev. 894, 905 n.6, 313 P.3d 880, 887 n.6 (2013) ("Arguments

---

*...continued*

than cogent. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (providing that this court need not consider claims that are not cogently argued or supported by relevant authority). Moreover, Knickmeyer did not raise this argument before the arbitrator, belatedly raising it for the first time only before the district court. *See State Bd. of Equalization v. Barta*, 124 Nev. 612, 621, 188 P.3d 1092, 1098 (2008) ("Because judicial review is limited to the administrative record, arguments made for the first time on judicial review are generally waived by the party raising them."). Consequently, the arbitrator did not make any factual findings relating to whether the EJDC breached the MOU. Without these factual findings, we are unable to address this issue—unlike his argument relating to the applicability of NRS Chapter 289, which presents a pure question of law that does not depend on facts outside of the appellate record. *See Nev. Power Co. v. Haggerty*, 115 Nev. 353, 365 n.9, 989 P.2d 870, 877-78 n.9 (1999) (explaining that the court would resolve an issue of statutory interpretation not litigated below "in the interests of judicial economy"). Finally, Knickmeyer's brief also references an alleged constitutional due process violation, but he merely re-frames his arguments about the scope and application of NRS Chapter 289 and the MOU as due process problems without identifying or discussing any other independent procedural or substantive due process violation.

not raised before the appropriate administrative tribunal and in the district court normally cannot be raised for the first time on appeal."). Moreover, the arbitrator expressly stated that he was not relying upon the prior incidents in reaching his decision and that the instant incident alone provided sufficient grounds for termination. Consequently, any discovery relating to those incidents is entirely irrelevant to the case at hand. *See* NRCP 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *see also Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 1006, 194 P.3d 1214, 1219 (2008) ("[W]hat is clear from our caselaw is that prejudice must be established in order to reverse a district court judgment; it is not presumed and is established by providing record evidence showing that, but for the error, a different result might have been reached.").

To overcome these defects, Knickmeyer argues on appeal that, under NRS Chapter 289, all discovery relating to prior disciplinary actions must automatically be provided whether any party individually requests it or not, and whether or not the arbitrator ultimately ended up relying upon it in his final decision. Knickmeyer's argument hinges on two contentions: first, that the statutes in question apply to him as a judicial marshal employed by the EJDC and, second, if they do apply, that they were violated by the EJDC in this case despite his never having requested discovery or objected to its absence. Both contentions must be true for Knickmeyer to win this appeal; if either fails, then we must decide the issue against him.

 

NRS Chapter 289 grants certain procedural protections to "peace officers" whenever adverse employment actions are initiated against them by their employers. *See* NRS 289.010(3). *See generally Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev. 328, 336-37, 302 P.3d 1108, 1114 (2013). Judicial marshals are specifically identified as peace officers in NRS 289.150(4). Knickmeyer thus argues that all of the protections of NRS Chapter 289 must apply to him. Knickmeyer is partially correct in that judicial marshals are "peace officers" covered by the statute and therefore certain sections of NRS Chapter 289 indisputably apply to judicial marshals such as him.

This, however, doesn't quite resolve the question at hand. Peace officer or not, portions of Chapter 289 apply only to petitioners who are employed by a "law enforcement agency." *See, e.g.*, NRS 289.020(1) ("A law enforcement agency shall not use punitive action . . . ."); NRS 289.025 ("the home address of a peace officer and any photograph in the possession of a law enforcement agency are not public information"). Other portions of this chapter do not contain this limitation. *See, e.g.*, NRS 289.810(1) ("A peace officer shall not use a choke hold on any other person"); NRS 289.820(1) ("A peace officer shall not engage in racial profiling"). We must presume that the inclusion or omission of these words from different parts of the statute was purposeful. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[A] material variation in terms suggests a variation in meaning."). Consequently, the plainest and most obvious meaning of Chapter 289 is that many portions of it apply broadly to any peace officer employed by any entity, but other portions apply in a more limited way only to peace officers employed by a "law enforcement agency."

The statutes that Knickmeyer alleges that the EJDC violated in this case are NRS 289.040, NRS 289.057, and NRS 289.060,[3] which set forth procedures that must be employed before a peace officer can be subjected to adverse employment action. NRS 289.040 prohibits law enforcement agencies from inserting unfavorable comments into the peace officer's administrative file unless certain requirements are met. NRS 289.057 governs how a law enforcement agency may investigate allegations of misconduct and initiate discipline, including discovery procedures. NRS 289.057(3)(a) permits the peace officer to review any recordings, notes, and interview transcripts pertaining to the investigation after the investigation has concluded. NRS 289.060 describes how law enforcement agencies may conduct disciplinary hearings.

But all of these statutes expressly apply only when a "law enforcement agency" seeks to impose discipline against one of its peace officers. Thus, these provisions can apply to Knickmeyer only if his employer, the EJDC, can be considered a "law enforcement agency" within the meaning of NRS Chapter 289. This presents a question of statutory interpretation.

We review questions of statutory meaning de novo. *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). In interpreting a statute, we begin with its plain meaning and consider the statute as a whole, awarding meaning to each word, phrase, and provision, while striving to avoid interpretations that render any words superfluous or meaningless. *Haney v. State*, 124 Nev. 408, 411-12, 185 P.3d 350, 353

---

[3]Knickmeyer also mentions NRS 289.080 in his brief as a statute that applies to him, but doesn't allege that 289.080 was violated.

 

(2008). If the Legislature has independently defined any word or phrase contained within a statute, we must apply that definition wherever the Legislature intended it to apply because "[a] statute's express definition of a term controls the construction of that term no matter where the term appears in the statute." *Williams v. Clark Cty. Dist. Attorney*, 118 Nev. 473, 485, 50 P.3d 536, 544 (2002); 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 20:8 (7th ed. 2009). The words of a statute must be given their plainest and most ordinary meaning unless the Legislature clearly used them differently, or the words are used in an ambiguous way. *See State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004) ("We must attribute the plain meaning to a statute that is not ambiguous." (citing *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004)); *see also* Scalia & Garner, *supra*, at 56 ("The words of a governing text are of paramount concern . . . .").

NRS Chapter 289 does not contain its own definition of "law enforcement agency." However, NRS 179D.050 and NRS 62A.200 both define the phrase "local law enforcement agency" as referring to a sheriff's office or police department. Furthermore, the word "agency" is typically used by the Nevada Supreme Court and in administrative regulations to refer to subdivisions of the executive branch, not divisions of the judiciary. *Cf.* NAC 239.690; *Las Vegas Metro. Police Dep't v. Blackjack Bonding, Inc.*, 131 Nev. ___, ___ n.4, 343 P.3d 608, 613 n.4 (2015). "We presume that the Legislature enact[s a] statute with full knowledge of existing statutes relating to the same subject." *Nev. Attorney for Injured Workers v. Nev. Self-Insurers Ass'n*, 126 Nev. 74, 84, 225 P.3d 1265, 1271 (2010) (internal quotation marks omitted). Thus, the plain text of the relevant statutes makes clear that the term "law enforcement agency" does not encompass a

judicial court such as the EJDC. We ought to conclude that the Legislature said what it meant and meant what it said, and we could end our inquiry there.

But there's more. Knickmeyer's argument betrays a fundamental misunderstanding of the respective roles of the three branches of Nevada government. To conclude that the EJDC is a "law enforcement agency" is to conflate the roles of the judicial and executive branches and to presume that the Legislature used words in a most unnatural way. *See* Nev. Const. art III, § 1 ("The powers of the Government of the State of Nevada shall be divided into three separate departments, the Legislative, the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.").

Under our state constitution, the Legislature writes the laws. *See* Nev. Const. art. 4, § 1; *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967). The Judiciary hears justiciable controversies and issues judgments and decrees in individual cases. *See* Nev. Const. art 6, § 6; *Galloway*, 83 Nev. at 20, 422 P.2d at 242. And the Executive "enforces" the laws. *Galloway*, 83 Nev. at 20, 422 P.2d at 242 ("The executive power extends to the carrying out and enforcing the laws enacted by the Legislature."); *see* Nev. Const. art. 5, § 7 (the Governor "shall see that the laws are faithfully executed"); *see also Morrison v. Olson*, 487 U.S. 654, 706 (1988) (Scalia, J., dissenting) (prosecuting crimes is a "quintessentially executive function"). The separation of these powers between three independent branches of government with the power to

check-and-balance each other is a central tenet of our constitutional structure and a fundamental bulwark of democratic freedom. *See Morrison*, 487 U.S. at 706 (Scalia, J., dissenting) (citing The Federalist No. 47 (James Madison) (Random House 1941)); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 640 (1952) (Jackson, J., concurring) ("[T]he Constitution diffuses power the better to secure liberty"; "The purpose of the Constitution was not only to grant power, but to keep it from getting out of hand."); *cf. Comm'n on Ethics v. Hardy*, 125 Nev. 285, 292, 212 P.3d 1027, 1103-04 (2009) (discussing differences between Nevada Constitution and U.S. Constitution). The powers of the EJDC are enumerated in Article 6, Section 6 of the Nevada Constitution, and Knickmeyer does not contend that the EJDC engages in investigating and prosecuting crimes as part of its constitutionally-assigned judicial functions.

Thus, the judiciary is not empowered to engage in "law enforcement" functions any more than the executive or legislative branches are empowered to engage in judicial functions. *See generally* John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L.J. 1219, 1230 (1993) ("Separation of powers is a zero-sum game. If one branch unconstitutionally aggrandizes itself, it is at the expense of one of the other branches."). The phrase "law enforcement agency" as used in NRS Chapter 289 therefore cannot be naturally read to encompass the EJDC, and the statutes cited by Knickmeyer—NRS 289.040, NRS 289.057, and NRS 289.060, all of which apply only to "law enforcement agencies"—

 

do not apply to the EJDC.[4] *See Mangarella v. State*, 117 Nev. 130, 134-35, 17 P.3d 989, 992 (2001) (holding that Nevada courts must interpret statutes so that they do not conflict with the state or federal constitutions). The EJDC could not have violated statutes that do not apply to it, and consequently the EJDC committed no discovery violations that would entitle Knickmeyer to relief.

*Whether the arbitrator exceeded his authority*

Knickmeyer also argues that the arbitrator exceeded his authority by relying upon the Clark County Marshal's Division Policy and Procedure Manual, and upon certain law review articles, as guidelines for acceptable conduct when the MOU makes no explicit reference to either.

When reviewing whether an arbitrator exceeded his powers, this court begins by presuming that arbitrators act within the scope of their authority. *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 697, 100 P.3d 172, 178 (2004). Arbitrators can exceed their authority when they act outside the scope of the governing contract, but this court will not vacate an arbitrator's award—even if erroneous—if the arbitrator's interpretation is rationally grounded in the agreement or there is "colorable justification" for construing and applying the contract the way the arbitrator did. *Id.* at 698, 100 P.3d at 178. Thus, the central question is "whether the arbitrator had the authority under the agreement to decide an issue, not whether the issue was correctly decided." *Id.*

_____

[4]A potentially interesting question exists relating to whether, by signing the MOU, the EJDC contractually agreed to assume some of the responsibilities outlined in those statutes even if they otherwise would not have applied. But as noted above in footnote 2, Knickmeyer did not argue this issue before the arbitrator, the arbitrator made no factual findings relating to it, and therefore we need not address it.

The parties agree that the governing agreement here is the MOU. Knickmeyer argues that the MOU did not allow the arbitrator to consider the Clark County Marshal's Division Policy and Procedure Manual, or any other sources such as law review articles, because the MOU did not explicitly reference them. But the arbitrator could have rationally interpreted those sources to represent accurate summaries of the "established rules, regulations or policies of the Courts" that the MOU permits to be considered. *See id.* ("Arbitrators do not exceed their powers if their interpretation of an agreement, even if erroneous, is rationally grounded in the agreement."). Consequently, "[t]he arbitrator's total findings demonstrate that he was construing the contract, and the record supports more than a colorable justification for the outcome." *Id.* at 698-99, 100 P.3d at 179. Accordingly, Knickmeyer has not met his burden of demonstrating, by clear and convincing evidence, that the arbitrator exceeded his authority.

*Whether the arbitrator disregarded the law*

Knickmeyer's final argument is that the arbitrator consciously disregarded relevant law by failing to determine whether the termination was reasonable in light of less severe forms of discipline. A court may vacate an arbitration decision if the arbitrator manifestly disregarded relevant law. *Bohlmann v. Printz*, 120 Nev. 543, 545-47, 96 P.3d 1155, 1156-58 (2004), *overruled on other grounds by Bass–Davis v. Davis*, 122 Nev. 442, 452 n.32, 134 P.3d 103, 109 n.32 (2006). Relief is "extremely limited" and manifest disregard occurs only when an arbitrator

"recognizes that the law absolutely requires a given result and nonetheless refuses to apply the law correctly." *Id.*

Here, Knickmeyer's argument is belied by the record. The arbitrator's decision contains numerous references to the available options of progressive discipline and explains quite clearly why Knickmeyer's conduct was "sufficiently egregious" to justify termination without first imposing less severe forms of discipline. Thus, Knickmeyer has not met his heavy burden of showing, by clear and convincing evidence, that the arbitrator consciously ignored applicable law in deciding that termination was appropriate.

## CONCLUSION

For the foregoing reasons, Knickmeyer has failed to demonstrate that the arbitrator either exceeded his authority or manifestly disregarded the law, and we affirm the district court's denial of his petition to set aside the arbitration order.

_____, J.
Tao

I concur:

_____, J.
Gibbons